[No. 66630-4-I.   Division One.   November 13, 2012.]

SUSAN FORBES, *Appellant*, v. THE CITY OF GOLD BAR, *Respondent*.

*Anne K. Block* (of *Law Offices of Anne K. Block LLC*), for appellant.

*Margaret J. King* (of *Kenyon Disend PLLC*), for respondent.

¶1 GROSSE, J. — The Public Records Act (PRA), chapter 42.56 RCW, requires a public agency to promptly respond to a request for public records within five business days by providing the records, denying the request, or providing a reasonable time frame within which to respond to the request. The act recognizes that there are situations where an agency needs additional time to respond to a request. This was the situation here. The records requests encompassed records that were stored on the personal computers of city officials, necessitating the hiring of an outside consultant to retrieve records from various Internet providers. The response to the request was reasonable in light of the difficulty the city had in retrieving the information and the efforts it expended to recover the information. We affirm the trial court's summary judgment dismissal.

### FACTS

¶2 On May 17, 2010, Susan Forbes filed a summons and complaint alleging that the city of Gold Bar failed to

respond to her requests for public records. Forbes made three disclosure requests to the city. The first, dated May 20, 2009, and the second, dated November 10, 2009, requested all letters and e-mails between then Mayor Crystal Hill and all city council members, staff, and certain select planning commissioners that mentioned Susan Forbes.

¶3 The first request, numbered 2009-53, received on May 21, 2009, sought

[a]ll letters and emails between Mayor Hill and all City Council members mentioning Susan Forbes and all emails between Mayor Hill & planning commissioner Kelly Broyles mentioning Susan Forbes from January 1, 2009 and present. Also, all emails between City Staff & Mayor Hill mentioning Susan Forbes for January 1, 2009 to present.

On May 26, the city responded with an estimated time of response of June 19, 2009. The city subsequently notified Forbes on June 19, July 10, August 12, and October 2, 2009 that it needed additional time to fulfill her request. Various reasons were given:

- The city needed to hire additional help because of volume of broad public requests.
- 37 public records requests had been received from April through July 2009 and the city had completed 27 of them.
- The city council was reviewing 27,000 e-mails.
- Even more help was needed to respond.
- Officials used individual personal digital assistants (PDAs) and personal home computers to conduct city business.

¶4 On October 2, 2009, the city noted that it was in the final stage of processing Hill's Blackberry e-mails by Bates numbers and anticipated PDF (portable document format) copies within two weeks, setting November 6, 2009 as the target for release. On that date, the city notified Forbes that 1,700 e-mails from Hill's Blackberry were unresponsive to the request, but the city could provide her with a compact

disc (CD) of those e-mails if she wished. The city would continue to review the e-mails from the AOL (America Online) account and the remaining e-mails on the Blackberry, anticipating a response by January 15, 2010.

¶5 On November 10, 2009, Forbes made a second request, numbered 2009-115, for public records, requesting

[a]ll emails sent by or received by Dorothy Croshaw and all elected or appointed council, the Mayor and all City Staff, and Christopher Wright which in any way relates to Susan Forbes. Again, this is a purposeful broad public records request intended to obtain all emails (including any attachments to those emails) sent to or received by Dorothy Croshaw from any Gold Bar official, whether a governmental or private computer system or electronic device was used, it's subject to the Washington State Public Records Act . . . .

The third request, numbered 2010-22, was made on March 12, 2010, and requested

[a]ll text messages and photos sent by Mayor Hill to all elected or appointed council, all elected and appointed Snohomish County employees, and all City Staff, present and past during regular business hours for City Hall from January of 2006 to date of her resignation. All text messages and photos received by Mayor Hill from all elected or appointed City council, all elected and appointed Snohomish County employees, and all City Staff, present and past during regular business hours for City Hall from January of 2006 to date of her resignation.

In September 2008, the city contracted with Michael Meyers to build a server and configure a domain based network to centrally locate city related documents. New personal computers were also built to replace aging equipment, including a personal computer in the mayor's office that was inoperable. In June 2009, Meyers was hired again as a consultant to help respond to the city's ever growing requests for records. Until January 2010, the city's e-mail flowed through GoDaddy.com POP3 mail servers and downloaded directly to users' personal computers. Because of the

configuration of the city's system, e-mails had to be downloaded as personal storage table (PST) files.

¶6 To accomplish this task, Meyers accessed several e-mail servers, both at the city and from other private exchanges—Yahoo, AOL, MSN (Microsoft Network), and Comcast—downloading them all as PST files. In January 2010, the public requests workload continued to escalate, necessitating the city's move to a central e-mail database. By March 2010, the exchange server was set up, permitting city employees to easily access the data and search the e-mails independently of each other.

¶7 The city was receiving additional requests both from Forbes and other individuals associated with her. Forbes writes a blog entitled goldbarreporter.org. In July 2009, Mayor Hill resigned and Joe Beavers was appointed mayor. At that time there were 82 record requests from Forbes and other persons aligned with her. Most of those requests were processed quickly, except for those that required extensive production and review of documents. To avoid the city's coming to a standstill, the city hired an additional employee and transferred an employee from the maintenance department to work on responding to Forbes' requests.

¶8 The city released records periodically to Forbes as those records became available. The city sent numerous communications to Forbes during this time, keeping her apprised of the status of the requests and the city's response thereto.

¶9 Unsatisfied with the time it took to release the records and the failure of the city to create a log outlining each record withheld on the personal e-mails of the various past and present city officials, Forbes brought suit. The city moved to show cause to determine that it had complied with the records requests, and moved for dismissal. The trial court granted the city's motion and dismissed with prejudice.

¶10 Forbes appeals.

## ANALYSIS

¶11 RCW 42.56.520 requires a public agency to respond to a request for public records within five business days by providing the records, denying the request, or providing a reasonable timeframe within which to respond to the request. RCW 42.56.520 further provides that an agency may need additional time within which to respond because of the need to

clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request.

Pursuant to RCW 42.56.570(2) and (3), the legislature directed the attorney general to adopt advisory model rules on public records compliance setting forth the "best practices" for compliance with the PRA.[1] Those model rules provide that an agency should provide records within the reasonable time that the agency has set forth "or communicate with the requester that additional time is required to fulfill the request based on specified criteria."[2]

¶12 RCW 42.56.550 provides:

(2) Upon the motion of any person who believes that an agency has not made a *reasonable estimate of the time that the agency requires to respond to a public record request*, the superior court in the county in which a record is maintained may require the responsible agency to show that the estimate it provided is reasonable. The burden of proof shall be on the agency to show that the estimate it provided is reasonable.

(3) Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo. Courts shall take into account the policy of this chapter that

---

[1] WAC 44-14-00001.

[2] WAC 44-14-04003(10).

free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. Courts *may examine any record* in camera in any proceeding brought under this section. The court may conduct a hearing based solely on affidavits.

(4) Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or *the right to receive a response to a public record request within a reasonable amount of time* shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.[3]

¶13 The operative word is "reasonable." The trial court found the city complied within a reasonable time frame and dismissed Forbes' complaint with prejudice. The trial court also refused to conduct an in camera review of those documents that the city said were personal to the respective city officials.

¶14 Because city officials used their private e-mail accounts to conduct city business, the city hired an independent information technology person, Michael Meyers, to obtain the documents from the various individuals' private e-mail accounts. City officials thought that Meyers was downloading just those files that concerned city business. However, Meyers downloaded the entire e-mail account of every city council member and then-Mayor Hill. The downloads from the personal computers were placed in three categories: "conduct of business," "not conduct of business," and "redacted."

¶15 The city spent 12 percent of its income responding to public records requests in 2010. Mayor Beaver's affidavit setting forth the steps the city took to comply with

---

[3] (Emphasis added.)

the public records request was extensive. Pursuant to RCW 42.56.080 an agency is permitted to make records available on a partial or installment basis as additional records are assembled to complete the request. As the trial court noted in its oral ruling, 28,290 records were made available in a total of 11 disclosures. Exhibit D, attached to Mayor Beaver's declaration, noted that the following records were made available:

- 1,700 records (via letter and CD) – Nov 6, 2009
- 140 records (via letter and CD) – Jan 12, 2010
- 500 records (via e-mail and CD) – Feb 8, 2010
- 540 records (via e-mail and CD) – Feb 23, 2010
- 1,790 records (via e-mail and CD) – Mar 9, 2010
- 0 records (via e-mail with reply) – March 30, 2010
- 0 records (via e-mail) – May 14, 2010
- 13,000 records (via e-mail and optical disc storage (DVD)) – May 28, 2010
- 10,000 records (via e-mail and DVD) – June 23, 2010
- 120 records (via e-mail and CD) – July 6, 2010
- 0 records search instructions (via e-mail) – Aug 20, 2010
- 0 records but list of responsive records (via e-mail with file) – August 27, 2010
- 180 records redacted with log (via e-mail and CD) – Aug 27, 2010 (also include additional 40 records in PST of unredacted e-mails)
- 280 records (via e-mail and CD) – Sept. 16, 2010

On May 28, 2010 and June 23, 2010, the city released DVDs containing 13,000 and 10,000 e-mails, respectively, of all nonexempt conduct of business e-mails. On August 27, 2010 and September 16, 2010, the city released the first quarter and second quarter 2009 exempt conduct of business.

¶16 In *Neighborhood Alliance of Spokane County v. Spokane County*,[4] the Supreme Court adopted the Freedom of Information Act (FOIA)[5] standards of reasonableness regarding an adequate search. "The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents."[6] Because the PRA closely parallels FOIA, interpretations of that act can be helpful in construing the PRA.[7]

¶17 As stated by the Tenth Circuit in *Trentadue v. Federal Bureau of Investigation*, the focus of the judicial inquiry into a reasonable-search requirement is the agency's search process not the result of that process:

> [T]he focal point of the judicial inquiry is the agency's search process, not the outcome of its search. "The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate[,] . . . [which is determined under] a standard of reasonableness, and is dependent upon the circumstances of the case." The reasonableness of an agency's search turns on "the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives."[8]

Here, the city conducted an extensive search of multiple sites where the records Forbes requested might be housed. This search was reasonably calculated to uncover all relevant documents. The personal e-mails are not responsive to Forbes' requests and, therefore, nothing was withheld and no log document needed to be created.

---

[4] 172 Wn.2d 702, 261 P.3d 119 (2011).

[5] 5 U.S.C. § 552.

[6] *Neighborhood Alliance*, 172 Wn.2d at 720.

[7] *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978).

[8] 572 F.3d 794, 797-98 (10th Cir. 2009) (most alterations in original) (citations omitted) (quoting *Weisberg v. U.S. Dep't of Justice*, 227 U.S. App. D.C. 253, 705 F.2d 1344, 1351 (1983); *Davis v. U.S. Dep't of Justice*, 373 U.S. App. D.C. 156, 460 F.3d 92, 105 (2006)).

### In Camera Review

¶18 Forbes argues the trial court erred by failing to conduct an in camera review of the data obtained from the personal PDAs and e-mails of the various city officials. She contends that the city failed to create a log as required by the PRA. The city argues that the e-mails not released were private e-mails garnered in the city's attempt to recover those e-mails that were work related that existed on various city officials' personal electronic devices. Nonetheless, the city did not object to Forbes' request for an in camera review and was prepared to hand over the material to the trial court. The trial court found this unnecessary, and further found that Forbes did not have any clear articulation as to why such a review would be appropriate; thus, the request amounted to nothing more than a fishing expedition.

■■ ¶19 This court reviews the trial court's decision on whether or not to conduct an in camera review for abuse of discretion.[9] RCW 42.56.010(3) defines "public record" as including

> any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

A public records case may be decided based on affidavits alone.[10] Purely speculative claims about the existence and discoverability of other documents will not overcome an agency affidavit, which is accorded a presumption of good faith.[11] Here, the affidavits submitted by the city demonstrate a clear and consistent record (uncontradicted) that

---

[9] *Yakima Newspapers, Inc. v. City of Yakima*, 77 Wn. App. 319, 328, 890 P.2d 544 (1995).

[10] *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 153-54, 240 P.3d 1149 (2010).

[11] *Trentadue*, 572 F.3d at 808 (citing *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 288 U.S. App. D.C. 324, 926 F.2d 1197, 1200 (1991)).

the city conducted an adequate search for the requested documents and responded in a reasonable time. Pursuant to *Neighborhood Alliance*, "the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith. These should include the search terms and the type of search performed, and they should establish that all places likely to contain responsive materials were searched."[12]

¶20 The purely personal e-mails of those government officials are not public records. Forbes' reliance on *Mechling v. City of Monroe*[13] to the contrary is misplaced. There, the court held that personal e-mail messages of city council members in which they discussed city business were not exempt from disclosure under the personal information exemption of the public disclosure act, former chapter 42.17 RCW (1973).[14] In *Mechling*, at issue was the release of personal e-mail addresses used by city council members to discuss city business. The city sought to redact those e-mails under the exemption provided to personnel or employment related records.[15] The *Mechling* court held that such records are subject to disclosure if the e-mails contain information relating to the conduct of government. But here the records are not those discussing governmental conduct but, rather, move e-mails in which there is no city business referenced or discussed.

¶21 Likewise, Forbes' reliance on *Rental Housing Ass'n of Puget Sound v. City of Des Moines (RHA)*[16] is without merit. There the court addressed the applicability of the one-year statute of limitations triggered when the agency either claims an exemption or last produces a record on a partial

---

[12] 172 Wn.2d at 721.

[13] 152 Wn. App. 830, 222 P.3d 808 (2009), *review denied*, 169 Wn.2d 1007, 236 P.3d 206 (2010).

[14] *Mechling*, 152 Wn. App. at 847-48.

[15] *Mechling*, 152 Wn. App. at 846; former ch. 42.17 RCW (recodified and renamed as the PRA).

[16] 165 Wn.2d 525, 199 P.3d 393 (2009).

or installment basis. In *RHA*, a request was made for 12 different categories of documents relating to the city's "crime free rental housing program."[17] In its records request, the housing association asked for a privilege log for each record claimed to be exempt from disclosure.[18] The court concluded that the city's reply did not constitute a proper claim of exemption because it failed to "(1) adequately describe individually the withheld records by stating the type of record withheld, date, number of pages, and author/recipient or (2) explain which individual exemption applied to which individual record."[19] Thus, the court held that by failing to claim an exemption, the city's response did not trigger the one-year statute of limitations. The records here are not claimed as exempt. The records are personal e-mails, which do not pertain to government business.[20]

¶22 Affirmed.

Cox and DWYER, JJ., concur.

Review denied at 177 Wn.2d 1002 (2013).

---

[17] *RHA*, 165 Wn.2d at 528.

[18] *RHA*, 165 Wn.2d at 528-30.

[19] *RHA*, 165 Wn.2d at 539.

[20] Because all of the officials consented to a search of their personal computers, we do not address whether such a search would violate article I, section 7 of the state constitution, which states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." *See O'Neill*, 170 Wn.2d at 155 n.1.