# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

HOWARD J. GALE,

                Appellant,

                v.

CITY OF SEATTLE, a local agency, and
SEATTLE CENTER DEPARTMENT,

                Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 70212-2-I

DIVISION ONE

UNPUBLISHED

FILED: February 10, 2014

LAU, J. — Howard Gale sued the City of Seattle and Seattle Center Department alleging violations of the Public Records Act (PRA), chapter 42.56 RCW. The trial court found the City violated the PRA when it inadvertently failed to disclose responsive documents in its first records disclosure. It later found that the City complied with its second disclosure after Gale raised concerns about missing documents. The court imposed $10 per day penalties against the City for the noncompliant PRA days. Gale challenges numerous findings of fact and conclusions of law and contends the City remains in violation of the PRA. Because (1) the record supports the trial court's determinations regarding PRA compliance, penalties, and costs and (2) Gale's

remaining arguments are raised for the first time on appeal and inadequately argued, we affirm. However, because Gale was entitled to his costs incurred in litigating the PRA suit below, we remand with instructions to the trial court to determine Gale's costs conditioned on his submission of an itemized cost affidavit in the trial court.

## FACTS

### PRA Request and City's First Two Disclosures

This case involves Howard Gale's public records request made to Seattle Center and the City of Seattle under the PRA. On October 18, 2012, Gale e-mailed a PRA request to Seattle Center's chief operating officer, Mary Wideman-Williams. Gale's request was titled, "WA State Open Records Request for information concerning AC outlet access in the Armory." Gale specified four topics covered by his PRA request:

> (1) providing, restricting, or changing access to AC outlets at Seattle Center (including, but not limited to, turning off AC power at specified times, physically restricting access, etc.);
> (2) putting any changes into effect (policies, staff behavior, signage, etc.) that might restrict or control the access of any particular group of people to space or services (including access to AC outlets) at Seattle Center;
> (3) the purchase and installation of AC outlets for the new renovation on the west side of the Armory main level;
> (4) the purchase and installation of AC outlet covers and/or locking devices for the above.

Gale specifically noted, "I would appreciate Seattle Center prioritizing the production or access or records relating to (3) and (4), a far smaller set of records." The same day, Wideman-Williams forwarded Gale's request to Seattle Center's Public Records Officer (PRO), Denise Wells.

Seattle Center's standard practice for responding to PRA requests requires the PRO to review the request and determine where responsive records are likely located.

-2-

The PRO then contacts the division director, as well as staff who the PRO determines are most likely to possess responsive records. The PRO often contacts the entire senior staff—consisting of directors from each division within the department, as well as several strategic advisors—to ensure that everyone who may have responsive records is notified of the request. The PRO may contact the PRA requestor (here Gale) if additional clarification is needed regarding the request.

On October 22, Wells e-mailed Gale to acknowledge receipt of his PRA request and estimated she would send him a final response on November 14. Also on October 22, Wells e-mailed the Seattle Center employees she determined were most likely to have knowledge or possession of responsive records, including senior staff, the chief operating officer, supervisors, electricians, and assistants to senior staff. Her e-mail requested them to search and produce responsive records. She also instructed them to check with any of their staff who might possess responsive records. Her e-mail to staff included a copy of Gale's PRA request so that staff knew the scope and subject of the request.

In addition to her duties as PRO, Wells also served as executive assistant to Seattle Center Director Robert Nellam. Wells personally searched Nellam's records. Wells determined Nellam had no electronic or hard files related to the request, so she searched Nellam's e-mail archives. She believes she used the search terms "outlet" and "outlets" because they would reasonably produce results responsive to Gale's request. She was not certain these were the exact search terms she used. Following routine Seattle Center practice, Wells requested and expected other employees to perform their own searches. She instructed and reminded her staff to search their hard

and electronic files and archived e-mails and assisted those needing help conducting the searches.[1] Wells then reviewed all gathered documents for responsiveness and exemptions.

On November 14, Wells e-mailed Gale the records responsive to his request. All of the records she sent him were nonexempt. The responsive records included Seattle Center work plans, an Armory electric outlet handout, Armory rules, e-mail communications with subject "Homeless and Seattle Center," internal Seattle Center staff communications, meeting notes, and purchase orders. On November 19, Gale e-mailed back and alleged that he believed many records were missing from the City's response. He based this belief on conversations with Armory staff, gaps in the records provided, and because he claimed to possess "copies of missing records that were originally sent to Seattle Center staff" regarding the issue at hand. Gale claimed that he would refrain from filing a lawsuit if these "missing records" were produced by 5 PM on November 29. He concluded his e-mail by stating, "Let me know if there is anything I can do to facilitate the search for all relevant documents."

On November 20, Wells informed Gale that she instructed staff to do a second search for responsive records. On November 29, Wells sent Gale an e-mail informing him that two staff members sent her additional responsive documents and that she also

---

[1] Chief Operating Officer Mary Wideman-Williams told Wells that she used the search term "outlet" for her e-mail search. Some staff also discussed use of the term "outlet" to locate responsive documents. In instructing staff who needed help with their searches, Wells used the search term "outlet" to conduct a sample search. However, Wells did not know which other search terms staff may have used to review their e-mails and files for responsive documents.

found additional responsive documents using the search term "Wi-Fi." Wells asked

Gale to provide additional clarification to help her locate any other responsive records:

> You state that you know of documents that are missing. I am not sure which documents you are referring to, but if you have additional clarification to provide, please feel free to send it to me and I will work to locate if there are any documents that are responsive as a result of additional clarification.

In her November 29 e-mail, Wells informed Gale that she was reviewing the additional

responsive documents and would produce them by December 7. Wells also spoke with

Gale on the telephone on November 29. During that conversation, Wells asked Gale for

clarification or additional information regarding his request and "specifically asked him

what documents he might have that he believed were responsive to his request that had

not been produced." Gale responded that Wells "was insulting his intelligence" and that

he would not "tip his hand."

On December 6, Wells e-mailed Gale a second installment of responsive

documents. In her e-mail, she asked him again to clarify his request if he believed

responsive documents remained outstanding. Gale provided no additional information.

On December 19, Wells discovered that one of the e-mails from the customer

service department referenced an attachment (a letter) that was not produced to Gale.

The department manager reported she had searched for the letter during the initial

search, but failed to find it. Wells asked the manager to look again, and the manager

found the letter after discovering it had been misfiled. Wells gave the letter to Seattle

Center's Law Department on December 20, and the department subsequently produced

it to Gale.

Lawsuit and Subsequent Disclosures

On December 3, 2012—three days before receiving Wells's second disclosure e-mail—Gale filed a complaint for violation of the PRA.[2] He alleged that several "sets of documents, reasonably presumed to exist, have not been provided as of November 29, 2012."[3] Gale also filed a motion for order to show cause, requesting an order compelling immediate production of the records he requested on October 18 and November 19. In his reply briefing on that motion, Gale suggested for the first time search terms that he claimed the City should have used in its record searches, all of which related to electrical outlets and power: "AC," "power," "AC power," "house current," "electricity," "electrical power," "electric outlet," and "120VAC." The City requested a continuance to "allow the City Law Department to conduct a search to address the concerns raised in [Gale's] complaint" and to "complete the search using all of [Gale's suggested search terms] and review the results of those searches." The court continued the show cause hearing to February 12.

The City's search turned up 2,362 records of which 196 were potentially responsive to Gale's PRA request. Of those 196 documents, 69 had already been produced to Gale, 21 were duplicates of previously disclosed documents, and 3 were redacted or exempt, leaving 104 previously unproduced responsive documents. Of those 104 previously unproduced records, 38 were documents that had never been produced to Gale; 39 were substantially similar to previously produced records; and 27

---

[2] Gale named both Seattle Center and the City of Seattle as defendants. We refer to Seattle Center and the City of Seattle collectively as "the City."

[3] In his complaint, Gale listed categories of documents he believed existed and claimed the City had failed to produce them.

were either wholly incorporated in the 38 new records or were substantially similar to the new records. The City gave Gale and the trial court the results of this third search on February 8, 2013.

The trial court conducted a show cause hearing.[4] On February 21, the court issued its "order for penalties, fees, and costs" in which it made numerous findings of fact and conclusions of law, determined the City violated the PRA with its initial search but complied with its second search (December 6), and imposed maximum penalties of $100 per day against the City. The court denied Gale's motion to "alter and amend court order," requesting an additional amount in penalties and costs and demanding the production of remaining responsive records he alleged existed. The City also moved for reconsideration, arguing that the court erred in imposing maximum penalties and in imposing penalties for days the court found the City to be in compliance with the PRA. On March 15, the court granted the City's motion. The court's order on reconsideration included the following findings of fact:

> 1. Plaintiff [Gale] submitted a request for records, which was received by the City on October 18, 2012.
> 2. The City conducted a search and provided the records it located at that time to Gale on November 14, 2012.
> 3. Gale informed the City on November 19, 2012 that he believed additional responsive records existed that may not have been provided in response to his request.
> 4. Upon being put on notice of Gale's concerns, the City immediately expanded the scope and search terms used, conducted a follow-up search, and provided the records it located at that time to Gale on December 6, 2012.
> 5. The City asked Gale in emails on November 29, 2012 and December 6, 2012, and in a telephone conversation on November 29 to clarify what

---

[4] The parties have not provided a transcript of this hearing for the record. According to the City, "During oral argument, Gale suggested for the first time that the City should have used the search terms 'homeless' and 'transient' in conducting its searches." Resp't's Br. at 10.

documents he believed were responsive to his request that had not been produced by the City.

6. Gale did not provide the requested clarification or any additional information to assist in locating responsive documents.

7. Gale filed this lawsuit on December 3, 2012. This was three days before he received the additional records provided by the City after its expanded search.

8. Upon request, on January 17, 2013 the City was granted a continuance to allow the Law Department to conduct an expanded search to include some of the search terms that Gale supplied for the first time in his reply filed with the Court on December 26, 2012.

9. This expanded search resulted in the production of additional responsive documents, which were produced to Gale on February 8, 2013.

The court found the following Yousoufian[5] mitigating factors applied to decrease

penalties against the City:

10. Lack of clarity in the PRA request. Gale made a clear, yet broad request for "information concerning AC outlet access in the Armory." On November 19, 2012 Gale claimed that documents were missing and offered to facilitate the search. The City legitimately inquired for clarification or additional information to locate responsive documents following Gale's November 19, 2012 renewed request.

11. The agency's prompt response or legitimate follow-up inquiry for clarification. The City promptly responded to Gale's October 18, 2012 records request within the statutory 5-day period, RCW 42.56.520. The City legitimately inquired for clarification or additional information to locate responsive documents following Gale's November 19, 2012 renewed request. These inquiries did not delay the City's production of responsive documents to Gale. Gale did not respond to these inquiries before filing this lawsuit alleging violations of the PRA.

12. The agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions. In response to Gale's records request, the City acted with good faith, due diligence, honesty, and without delay. The City promptly renewed and expanded its search upon notice that additional responsive document[s] might exist.

13. Proper training and supervision of the agency's personnel. The Seattle Center Public Disclosure Officer has extensive PRA experience, training, and access to resources for complicated requests or legal issues.

14. The reasonableness of any explanation for noncompliance by the agency. The Seattle Center Public Disclosure Officer properly determined the

---

[5] Yousoufian v. Office of Ron Sims, 168 Wn.2d 444, 229 P.3d 735 (2010), set forth mitigating and aggravating factors courts should consider in setting penalties for PRA violations. We discuss the Yousoufian factors in detail below.

scope of the request, the likely location of records, and the likely custodians of records. She conducted a search and instructed others to search for responsive records. The City admits that the first search may have been inadequate by inadvertently failing to produce some responsive documents. The City came into compliance with its second search.

15. The helpfulness of the agency to the requestor. The City immediately conducted a renewed and expanded search upon notice that responsive documents might be missing, even though Gale failed to provide clarification. The City Law Department ran a third forensic search for archived emails using search terms provided by Gale. The City has assisted Gale throughout the time it has processed his records request.

16. The existence of agency systems to track and retrieve public records. The City has electronic and hard files, and a searchable email archiving system.

(Boldface replaced with underlining.) The court also found one Yousoufian aggravating factor applied to increase penalties against the City: "The City did not strictly comply with PRA procedures when it inadvertently failed to produce responsive documents in its November 14, 2012 production to Gale."

Based on these facts, the court made the following conclusions of law:

1. The City violated the Public Records Act by failing to conduct an adequate search in its initial production to Gale's records request.

2. Upon being put on notice by Gale on November 19, 2012 that he believed additional responsive records existed, the City acted reasonably and conducted a legally adequate expanded search for responsive records and provided the responsive records it reasonably located to him on December 6, 2012.

3. The City became compliant with the Public Records Act when it conducted an expanded search and produced a second installment of documents on December 6, 2012.

4. The City Law Department's third search exceeded the reasonable standard of a legally adequate search.

5. As of December 6, 2012, the City has not violated the Public Records Act in responding to Gale's October 18, 2012 request.

6. The City did not act in bad faith, or in a negligent, reckless, or wanton manner.

7. The City's failure to provide responsive documents to Gale on November 14, 2012 was inadvertent and not intentional misconduct.

8. Gale has provided no evidence that he has suffered actual personal loss from any alleged misconduct by the City.

9. Gale has no cause of action against the City under RCW 42.56.070 or RCW 42.56.100.

10. As a pro se litigant, Gale is not entitled to attorneys' fees.

11. There are no remaining genuine issues of fact in this matter.

The court awarded Gale penalties of $10 per day for 22 days "for the documents produced on December 6, 2012 that were not produced in the original production on November 14, 2012, for a total amount of $220." Because the court determined the City did not violate the PRA after December 6, it awarded Gale no penalties for the documents produced on February 8, 2013 that were not produced in the December 6, 2012 installment. The court awarded Gale $230 in costs for the filing fee.

Gale appeals the court's order granting the City's motion for reconsideration and its costs award.

## ANALYSIS

### PRA Compliance as of the City's Second Disclosure (December 6, 2012)[6]

Judicial review of an agency's compliance with the PRA is de novo. Soter v. Cowles Publ'g Co., 162 Wn.2d 716, 731, 174 P.3d 60 (2007). "The [PRA] is a strongly worded mandate for broad disclosure of public records." Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). We liberally construe the PRA in favor of disclosure and narrowly construe its exemptions. RCW 42.56.030. The PRA requires every government agency to disclose any public record upon request unless an enumerated exemption applies. Sanders v. State, 169 Wn.2d 827, 836, 240 P.3d 120 (2010); RCW 42.56.070(1). The burden of proof is on the agency to establish that a specific exemption applies. Neighborhood Alliance of Spokane County v. County of

---

[6] The City concedes its first search for records was inadequate and does not appeal the trial court's related ruling.

Spokane, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). However, an agency has no duty to create or produce a record that is nonexistent. Building Indus. Ass'n of Wash. v. McCarthy (BIAW), 152 Wn. App. 720, 734, 218 P.3d 196 (2009). And the PRA "'does not authorize indiscriminate sifting through an agency's files by citizens searching for records that have been demonstrated not to exist.'" BIAW, 152 Wn. App. at 734-35 (quoting Sperr v. City of Spokane, 123 Wn. App. 132, 137, 96 P.3d 1012 (2004)) (emphasis omitted). "Purely speculative claims about the existence and discoverability of other documents will not overcome an agency affidavit which is accorded a presumption of good faith." Forbes v. City of Gold Bar, 171 Wn. App. 857, 867, 288 P.3d 384 (2012), review denied, 177 Wn.2d 1002 (2013).

In Forbes, we discussed the PRA's requirements in "reasonableness" terms:

> In Neighborhood Alliance of Spokane County v. Spokane County, the Supreme Court adopted the Freedom of Information Act (FOIA) standards of reasonableness regarding an adequate search. "The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents." [Neighborhood Alliance, 172 Wn.2d at 720]. Because the PRA closely parallels FOIA, interpretations of that act can be helpful in construing the PRA.
> As stated in the Tenth Circuit in Trentadue v. Federal Bureau of Investigation, [572 F.3d 794 (2009)] the focus of the judicial inquiry into a reasonable-search requirement is the agency's search process not the result of that process:
>> [T]he focal point of the judicial inquiry is the agency's search process, not the outcome of its search. "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate[,] [which is determined under] a standard of reasonableness, and is dependent upon the circumstances of the case." The reasonableness of an agency's search turns on "the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives."

Forbes, 171 Wn. App. at 866 (alterations in original) (internal citations, footnotes, and quotation marks omitted) (quoting Trentadue, 572 F.3d at 797-98).

Agencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered. Neighborhood Alliance, 172 Wn.2d at 719. The search should not be limited to one or more places if there are additional sources for the information requested. Neighborhood Alliance, 172 Wn.2d at 719. "This is not to say, of course, that an agency must search every possible place a record may conceivably be stored, but only those places where it is reasonably likely to be found." Neighborhood Alliance, 172 Wn.2d at 720.

Our Supreme Court has recognized that subsequent disclosure may bring an agency into compliance with the PRA. See Neighborhood Alliance, 172 Wn.2d at 727 (recognizing that an intervening disclosure stops the clock on daily penalties).

As noted above, public agency actions challenged under the PRA are reviewed de novo. RCW 42.56.550(3); Cornu-Labat v. Hosp. Dist. No. 2 Grant County, 177 Wn.2d 221, 229, 298 P.3d 741 (2013). An appellate court stands in the same position as the trial court when the record consists entirely of documentary evidence and affidavits. Cornu-Labat, 177 Wn.2d at 229. The reviewing court is not bound by the trial court's factual findings. Cornu-Labat, 177 Wn.2d at 229.

Scope of Request and City's Response

Gale contends that the City improperly limited its search and failed to address topic (2) of his PRA request, i.e., "putting any changes into effect . . . that might restrict or control the access of any particular group of people to space or services (including access to AC outlets) at Seattle Center" and similarly challenges the trial court's finding

-12-

that his PRA request was for "'information concerning AC outlet access in the Armory.'" He specifically claims that the City failed to perform an adequate search for records addressing the homeless or transient population that uses Seattle Center's AC outlets.

The subject line of Gale's e-mail containing his PRA request is "WA State Open Records Request for information concerning AC outlet access in the Armory." Each topic of Gale's four-part request uses the term "outlet." The preface to Gale's request states that Gale was in contact with Seattle Center staff regarding "restricting access to AC power at the Armory" and that he was requesting "objective information with which to assess both the cause and the nature of policies implemented by Seattle Center in regards to restricting access to AC outlets at the Armory." Within this context, Gale requested records addressing the four topics quoted above and specifically asked the City to prioritize issues (3) and (4), which related to purchase and installation of AC outlets and outlet covers/locking devices in the Armory. Reading liberally the plain language of the request, the City and the court reasonably determined the scope of Gale's request as relating to outlet access at the Armory.

Further, the City provided records responsive to Gale's entire request, including topic (2) quoted above. Gale cited to records responsive to topic (2) in his complaint. The complaint refers to records that were produced in the City's first disclosure on November 14: e-mail stating that weekly meetings would occur to discuss "How to manage our resident transient population? (includes making decisions about power outlets in the atrium);" meeting notes regarding "managing the potential displacement of transient population due to new [Center House] space use & amenities" and developing/strengthening exclusion rules. The City provided other documents to Gale

on November 14 related to restricting or controlling access to space or services,[7] and provided additional documents responsive to topic (2) of Gale's request in the second group of records produced on December 6.[8]

Gale admits he sought to "understand the reasons" for restricting AC outlet access at the Armory and claims, "It became apparent that the Seattle Center actions were part of a broader attempt to displace the homeless from the Armory . . . ." Appellant's Br. at 1. Based on his unsupported suspicions regarding the City's motives, Gale presumes more records must exist that explain the City's decision and interprets the absence of such records as proof that the City is withholding them. However, the fact that the City produced no records of how a decision was made does not necessarily indicate a missing record. As noted above, "[a]n agency has no duty to create or produce a record that is nonexistent." Sperr, 123 Wn. App. at 136-37. Further, the PRA "does not require agencies to research or explain public records, but only to make those

---

[7] See Clerk's Papers (CP) at 218 (meeting minutes refer to "access of electric outlets" and managing transient population); CP at 220 (e-mails referencing need for outlet covers "on 3th floor where a lot of kids hang out"); CP at 224 ("guidelines for providing Electricity will be developed soon"); CP at 225, 228 (e-mails referencing meeting with homeless representatives regarding covering the electrical outlets in the Armory); CP at 226 (e-mail regarding guidelines for use of outlets); CP at 234 (e-mails addressing homeless access to computer charging stations); CP at 242 (meeting notes addressing concerns about transient population and "Longer Term Strategies" including table time limits and locking outlets); CP at 272 (messaging point regarding locking electric outlets); CP at 273 (Armory rules of conduct).

[8] See CP at 286 (e-mail addressing "growing population of homeless and/or transient men and women who have been utilizing the Center House as a day center"); CP at 287 (Armory rules); CP at 289-303 (Seattle Center Campus Rules); CP at 305 (e-mail from Nick Licata expressing concern about "closing off all electrical outlets in the Center House, apparently as an attempt to restrict the usage of Wi-Fi by people, such as the homeless"); CP at 307-08 (Seattle Center's response letter to Licata email); CP at 346-47 (meeting minutes discussing decision to lock some outlets in Armory).

records accessible to the public." Smith v. Okanogan County, 100 Wn. App. 7, 12, 994 P.2d 857 (2000). Gale's speculation that more responsive records must exist is insufficient to raise substantial doubt as to the adequacy of the City's search. See Neighborhood Alliance, 172 Wn.2d at 741 ("[M]ere speculation will not suffice to rebut an agency's prima facie showing of an adequate search."); White v. United States Dep't of Justice, 840 F. Supp. 2d 83, 92 (D.D.C. 2012) (speculation that responsive records must exist is insufficient to cast doubt of accuracy of agency's search). And Gale's complaint primarily requested information explaining the produced records and alleged that documents must exist to explain the City's decisions and conclusions. See CP at 4-6. As noted above, the City is not required to explain public records. Smith, 100 Wn. App. at 12; Bonamy v. City of Seattle, 92 Wn. App. 403, 409, 960 P.2d 447 (1998). Gale may believe more documents should exist to reflect Seattle Center's decision-making process, but this is not a claim we can address.

The City agrees that Gale's initial request was clear on its face. The City searched for records addressing that request, including records responsive to topic (2) discussed above. But Gale now contends the City should have known he was making an expansive request for records regarding the homeless and transient population. Gale argues that his November 19, 2012 e-mail alleging missing documents "gave a clear indication as to the types of records missing . . . ." Appellant's Br. at 17. Review of that e-mail indicates to the contrary. Nothing in his initial PRA request or his November 19 e-mail mentions the terms "homeless" or "transient." The PRA does not "require public agencies to be mind readers." Bonamy, 92 Wn. App. at

409. And as discussed above, the City did produce documents responsive to topic (2), including documents addressing the homeless/transient population at Seattle Center.

To the extent Gale argues the City failed to comply as of December 6 because it produced responsive records after that date (on December 20, 2012, and in February 2013),[9] this argument lacks merit. In determining the adequacy of a search, the "focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate." Neighborhood Alliance, 172 Wn.2d at 719-20. Interpreting the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the court in Iturralde v. Comptroller of Currency, 315 F.3d 311 (C.A.D.C. 2003) explained:

> It is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate. Rather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search. After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them.

Iturralde, 315 F.3d at 315 (citations omitted).[10] "[T]he focus of the judicial inquiry into a reasonable-search requirement is the agency's search process not the result of that process."[11] Forbes, 288 P.3d at 388 (emphasis added). As noted above, Wells's unrebutted declaration established that Seattle Center followed standard procedures in

---

[9] In the trial court and on appeal, Gale claims that City's February 2012 production "includes documents in seven of the eight categories described by Gale and included three additional categories that Gale didn't know of." Appellant's Br. at 35.

[10] Iturralde provides guidance because, as noted above, our Supreme Court has held that "the adequacy of a search of records under the PRA is the same as exists under FOIA." Neighborhood Alliance, 172 Wn.2d at 719.

[11] Forbes directly refutes Gale's claim that "[t]here is no basis in law for finding that an agency comes into compliance prior to the release of documents responsive to the PRA request." Appellant's Br. at 35. Gale incorrectly focuses on the results, not the search process.

responding to Gale's request and took prompt action to expand the search upon notification that some records might be missing. Wells stated in her declaration:

> In regard to Mr. Gale's request, I conducted my search and instruction to others to search for responsive records in good faith and with due diligence. I searched for records in locations likely to have responsive records. I contacted others who were likely to have responsive records or have knowledge of the location of responsive records. In response to Mr. Gale's follow-up inquiry regarding the dates of two produced documents, I came across new information that provided me with a new lead to search for responsive records. I followed this lead, which resulted in additional responsive documents that were produced to Mr. Gale. Although Mr. Gale offered to provide assistance in the search for relevant documents in his November 19, 2012 email, he refused to provide any additional information in response to my repeated requests for clarifying information to address his concern that he has not received all responsive records.

Wells also stated that the December 20 disclosure was due to a misfiled document.

To the extent Gale argues the City should have used search terms in its initial search similar or identical to the search terms he suggested in his reply briefing below, he cites no authority addressing the adequacy of search terms or the reasonableness standard for such terms. Even assuming the City used only the search terms "outlet" or "outlets" and "Wi-Fi," in performing its second search,[12] Gale fails to explain why these terms are unreasonable given the plain language of his PRA request. Indeed, those terms appear calculated to broadly encompass Gale's entire request.

As discussed more fully below, Gale failed to respond to the City's request for clarification. The City nevertheless performed an expanded search with the information it had. An agency that conducts a search "'reasonably calculated to uncover all relevant documents'" is not liable under the PRA. Forbes, 288 P.3d at 388 (quoting Neighborhood Alliance, 172 Wn.2d at 720). "When examining the circumstances of a

---

[12] As noted above, Wells was not sure what other search terms employees may have used.

-17-

case, then, <u>the issue of whether the search was reasonably calculated and therefore adequate is separate from whether additional responsive documents exist but are not found.</u>" <u>Neighborhood Alliance</u>, 172 Wn.2d at 720 (emphasis added). Gale requested information concerning AC outlet access in the Armory. The City searched for this information. Wells's declarations describing these searches identify the probable search terms used, the places searched (hard and electronic files and archived e-mails), and establish that the City searched in locations likely to contain responsive records. Our review of the record indicates the trial court properly determined the City met its PRA requirements with the December 6, 2012 disclosure.

<u>City's Request for Clarification and Gale's Failure to Clarify</u>

Gale contends his obligation to clarify his request ended with the City's November 14, 2012 production of documents and the City had no right to ask him to clarify or provide more information. He thus challenges (1) the trial court's characterization of his November 19, 2012 e-mail as a "renewed request" and (2) the court's determination that the City legitimately asked for clarification and he failed to cooperate. The City agrees that Gale's initial request was clear. But under the unique facts of this case, Gale created the need for clarification when he e-mailed the City after its initial production of documents, expressed concern that documents were missing, and offered to "facilitate the search." It was Gale's own comment about possible missing documents and offer to help out of "good will and cooperation" that prompted the City's request to clarify and to provide more information. Gale declined to clarify and provided no additional information to the City. The City nevertheless promptly conducted a second search that produced additional responsive documents.

Bartz v. State Dep't of Corr. Pub. Disclosure Unit, 173 Wn. App. 522, 297 P.3d 737, review denied, 177 Wn.2d 1024 (2013), controls. Bartz informed the Department of Corrections (DOC) that its response to his PRA request was incomplete because he possessed e-mails between two DOC employees that should have been included in the responsive documents. Bartz, 173 Wn. App. at 527. DOC asked Bartz to supply the employees' names and the dates of the missing e-mails so it could perform a search. Bartz, 173 Wn. App. at 527. Bartz failed to provide the requested information to DOC or provide the allegedly unproduced e-mails to the trial court. Bartz, 173 Wn. App. at 527-28, 539 n.20. The court held that DOC "did not fail to produce requested records. On the contrary, the record shows that (1) DOC made multiple attempts to produce the requested records, even asking Bartz to provide specific names and dates for the e-mails he was seeking and performing another futile search when he refused to supply this information; and (2) DOC responded promptly to every letter Bartz sent involving this PRA request." Bartz, 173 Wn. App. at 539 (footnotes omitted).

Here, as in Bartz, Gale expressed concern over missing documents. He notified the City that he thought it failed to address his initial PRA request. Whether labeled a "renewed request" or notice to the City is irrelevant. The City promptly and justifiably asked Gale for information to aid in locating documents he claims were missing. Gale failed to comply. The City again attempted to produce the requested records, locating more records with its December 6 production. The record indicates the court properly determined that he "did not provide the requested clarification or any additional

information to assist in locating responsive documents."[13] The court's findings regarding the City's request for clarification and Gale's failure to cooperate support its conclusion that the December 6, 2012 production brought the City into PRA compliance.[14]

Penalties for PRA Violation

The PRA gives the trial court discretion to award a person who prevails against an agency in an action seeking a public record "an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." RCW 42.56.550(4).[15] Determination of a PRA per diem penalty involves two steps: (1) determining the amount of days the party was denied access to the public

---

[13] In his reply briefing on the motion to show cause below, Gale mentioned for the first time search terms he believed the City should have used. This briefing was directed at the court, submitted after Gale filed his lawsuit, and cannot reasonably be construed as providing the City with clarification or information to assist in the search.

[14] In a related argument, Gale contends the trial court erred in determining that the City Law Department's February 2013 search and production of records exceeded PRA requirements. As discussed above, the trial court correctly concluded the City achieved PRA compliance with its December 6, 2012 production of records. Gale mainly contends that the City produced records responsive to his request in its February 2013 production (thus showing the December 6 production was insufficient), the City still has not produced all records responsive to his request, and the City should have known to use the search terms "homeless" and "transient." We addressed those arguments above. Given the facts in this case, the trial court did not err in concluding the City's February 2013 production exceeded PRA requirements.

[15] RCW 42.56.550(4) provides in full: "Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record."

record and (2) determining the appropriate amount of the penalty. Yousoufian v. Office of Ron Sims, 168 Wn.2d 444, 459, 229 P.3d 735 (2010). Although the existence or absence of an agency's bad faith is the principal factor for consideration, no showing of bad faith is necessary before a penalty may be imposed on an agency. Amren v. City of Kalama, 131 Wn.2d 25, 36-38, 929 P.2d 389 (1997). Also, "a good faith reliance on an exemption will not exonerate an agency from the imposition of a penalty where the agency has erroneously withheld a public record." Amren, 131 Wn.2d at 36.

We review an award of per diem penalties under the PRA for abuse of discretion. Yousoufian, 168 Wn.2d at 458. An abuse of discretion is a manifestly unreasonable decision or one based on untenable grounds or untenable reasons. Yousoufian, 168 Wn.2d at 458. A decision is manifestly unreasonable if the court, despite applying the correct legal standard, adopts a view no reasonable person would take. West v. Thurston County, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012).

In Yousoufian, the court set forth guidelines for determining appropriate PRA violation penalties. Yousoufian, 168 Wn.2d at 459-63. Mitigating factors that may decrease the penalty are

> (1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exemptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.

Yousoufian, 168 Wn.2d at 467 (footnotes omitted). Aggravating factors that may increase the penalty are

(1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

Yousoufian, 168 Wn.2d at 467-68 (footnotes omitted).

The Yousoufian factors may overlap, may not apply equally or at all in every case, are for guidance only, and are not an exclusive list of appropriate considerations in determining a PRA penalty. Yousoufian, 168 Wn.2d at 468. No one factor should control, nor should the factors infringe on the trial court's considerable discretion to determine a PRA penalty. Yousoufian, 168 Wn.2d at 468. In Yousoufian, our Supreme Court held that the trial court's assessment of a $15 per day penalty was manifestly unreasonable in light of the county's "grossly negligent noncompliance with the PRA."[16] Yousoufian, 168 Wn.2d at 463. After analyzing the factors set forth above, the court set the penalty at $45. Yousoufian, 168 Wn.2d at 468-69.

Here, in deciding that a $10 per diem penalty was appropriate to the violation, the record shows the trial court carefully considered the Yousoufian mitigating and aggravating factors. Applying the mitigating factors, the court found that (1) although

_____

[16] The facts showed that the county repeatedly failed to meet its PRA responsibilities over a period of four years and made false assertions regarding the location of records, the production of records, and the extent of the search. Yousoufian, 168 Wn.2d at 455-56. Our Supreme Court held that the trial court failed to impose a penalty proportionate to the county's misconduct. Yousoufian, 168 Wn.2d at 463.

Gale's initial PRA request was clear, the City legitimately inquired for clarification following Gale's "renewed request;" (2) the City promptly responded to Gale's PRA request and its legitimate request for clarification did not delay production of responsive documents;[17] (3) the City acted in good faith, with due diligence, honesty, and without delay in renewing and expanding its search;[18] (4) Wells had extensive PRA experience, training, and access to resources; (5) Wells properly determined the scope of the request, and although the first search was inadequate due to inadvertent failure to produce some responsive documents, the City complied with its second search; (6) the City assisted Gale throughout the time it processed his records request; and (7) the City has systems to track and retrieve public records. Gale does not challenge the court's

---

[17] Gale cites no authority for his contention that "to serve as a mitigating factor in determining penalties, any requests by the City for clarification of Gale's PRA request would have had to occur prior to the City being in violation of the PRA . . . ." Appellant's Br. at 16.

[18] Gale challenges the court's conclusion that the City acted with good faith, honesty, due diligence, and without delay. Whether an agency acted in bad faith under the PRA presents a mixed question of law and fact, in that it requires the application of legal precepts (the definition of "bad faith") to factual circumstances (the details of the PRA violation). See Pasco Police Officers' Ass'n v. City of Pasco, 132 Wn.2d 450, 469, 938 P.2d 827 (1997) (noting that "[w]hether a party has failed to negotiate in good faith, although involving a substantial factual component, is a mixed question of law and fact."); Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993). Here, the trial court found a number of facts supporting its conclusion that the City acted in good faith, including that the City responded promptly to Gale's initial PRA request, promptly renewed and expanded its search upon notice that additional documents might exist, and asked Gale for help and clarification after he offered to "facilitate the search for all relevant documents." No evidence in the record indicates the City deliberately withheld records or otherwise acted in bad faith. To the contrary, the evidence indicates that the City acted "immediately" to address Gale's concerns and followed "normal [Seattle Center] protocols" in responding to Gale's request. Gale's bad faith argument depends on his argument that the City never complied with the PRA. We reject that argument as discussed above. The court did not err in finding an absence of bad faith.

findings regarding factors (4) and (7).[19] Our review of the documentary evidence, including Wells's declarations, shows the court's remaining findings were proper. To the extent Gale argues "a central component of [his] PRA request was, and remains, completely ignored" (referring to issue (2) in his PRA request), we address that issue above. Appellant's Br. at 26-27.

As to aggravating factors, the court determined that the City did not strictly comply with PRA requirements when it inadvertently failed to produce responsive documents in its first production to Gale. The City does not challenge that determination. Gale asserts that the court erred in failing to find the following aggravating factors: (1) "delayed response by the agency;" (2) "lack of proper training and supervision of the agency's personnel;" (3) "unreasonableness of any explanation for noncompliance;" (4) "negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA;" (5) "agency dishonesty;" (6) "public importance of the issue;" and (7) "a penalty amount necessary to deter future misconduct by the agency." Appellant's Br. at 28-32 (boldface omitted). Gale's assertions are unsupported by the record or legal authority. He merely repeats his arguments addressed above regarding the City's response to his request and claims the City's PRA violations are ongoing. We decline to further address this argument.

The record amply supports the trial court's findings and its consideration of the mitigating and aggravating factors. The trial court did not "'adopt[] a view that no reasonable person would take.'" Yousoufian, 168 Wn.2d at 459 (quoting Mayer v. Sto

---

[19] Gale cites no authority for his argument that in the context of this case, mitigating factors (4) and (7) should be considered aggravating factors. See Appellant's Br. at 25-28.

Indus. Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). Given the trial court's considerable discretion in setting penalty awards and the reasonableness of this award under the circumstances, we affirm the trial court's $10 per day penalty.[20]

### Request for In Camera Review

Gale contends the trial court erred by failing to review in camera records that the City claimed were exempt. While Gale argued summarily below that the City made "[o]verly broad claims for exemption," he did not request in camera review nor did he provide the trial court with a basis upon which it could conclude sua sponte that such an examination was necessary. RCW 42.56.550(3) provides in relevant part, "Courts may examine any record in camera in any proceeding brought under this section." (Emphasis added.) Alternatively, "[t]he court may conduct a hearing based solely on affidavits." RCW 42.56.550(3) (emphasis added). We review a trial court's decision whether to conduct an in camera review of records for abuse of discretion. Forbes, 171 Wn. App. at 867. On this record, no abuse of discretion occurred.[21]

### Missing E-Mail Attachments

Gale argues that the City should be required to release allegedly missing attachments from e-mails. Gale's opening brief fails to identify which e-mails are missing attachments and merely states that he "would like to specify the full list of such

---

[20] Given our conclusion that the trial court properly determined the City complied with the PRA as of December 6, 2012, we need not address Gale's argument that the court should have assessed penalties after that date.

[21] Further, Gale failed to challenge the specific, limited exemptions applied below. See CP at 156 (Gale argued without explanation that the City's exemption claims were "overbroad"); CP at 586-87 (City's exemption and redaction log for documents disclosed to Gale on February 8, 2013). He thus waived this challenge. RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005).

emails at a latter [sic] time." Appellant's Br. at 37. Nor did Gale identify the allegedly missing attachments below. See CP at 156 (alleging "[m]issing email attachments" but indicating that Gale "has not had sufficient time to document all missing email attachments."). Gale specifies for the first time in his reply brief that "Attachments are missing from emails at CP 386, 397, 452, 454-55, 474, 539, and 540 (and possibly others)." Appellant's Reply Br. at 25. This court does not consider issues argued for the first time in a reply brief. In re Marriage of Sacco, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). The reply brief is limited to a response to the issues in the responding brief. To address issues argued for the first time in a reply brief is unfair to the respondent and inconsistent with the rules on appeal. RAP 10.3(c); State v. Hudson, 124 Wn.2d 107, 120, 874 P.2d 160 (1994). We decline to review this claim.

Fees and Costs

In addition to a per diem penalty, the PRA provides for a mandatory[22] award of "all costs" to a person who prevails against an agency in an action seeking to inspect or copy a "public record." RCW 42.56.550(4). This court has interpreted "all costs" liberally to include "all of the reasonable expenses [the prevailing party] incurred in gaining access to the requested records," including "reasonable costs incurred in litigating the dispute." Am. Civil Liberties Union of Wash. v. Blaine Sch. Dist. No. 503, 95 Wn. App. 106, 117, 975 P.2d 536 (1999). We review an award of attorney fees and costs under the PRA for abuse of discretion. Kitsap County Prosecuting Attorney's Guild v. Kitsap County, 156 Wn. App. 110, 120, 231 P.3d 219 (2010).

---

[22] "Any person who prevails against an agency in any action in the courts [under the PRA] shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." RCW 42.46.550(4) (emphasis added).

Gale prevailed below in his claim that the City violated the PRA, and the court penalized the City for its violation. Gale contends that RCW 42.56.550(4) requires the superior court to award him compensation for "the many dozens of hours of labor this ongoing trial has consumed" as well as costs incurred for "printing, copying, electronic filing fees and other court fees for submitting and accessing documents, software, office supplies, etc." Appellant's Br. at 37. Regarding Gale's request for compensation for time spent on this litigation, Gale essentially argues he should receive the equivalent of attorney fees. But RCW 42.56.550(4)'s plain language awards "reasonable attorney fees," not fees in lieu of attorney fees to nonattorneys who represent themselves in PRA actions. RCW 42.56.550(4) (emphasis added). Further, we held that nonlawyers litigating PRA actions pro se incur no attorney fees and are not entitled to receive attorney fee awards under RCW 42.56.550(4). Mitchell v. Wash. State Dep't of Corrections, 164 Wn. App. 597, 608, 277 P.3d 670 (2011) ("[P]ro se litigants are generally not entitled to attorney fees for their work representing themselves."). See also In re Marriage of Brown, 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011) (citing Leen v. Demopolis, 62 Wn. App. 473, 486-87, 815 P.2d 269 (1991)) (Washington courts have awarded attorney fees to pro se litigants only when those litigants were themselves attorneys because they must take time from their practices to prepare and to appear like any other lawyer would.). We are aware of no Washington authority extending this rationale to a nonlawyer pro se litigant.

Regarding Gale's argument that he is entitled to other costs (printing, copying, various fees, etc.), the City claims Gale is not entitled to such costs because he never submitted a detailed cost affidavit below. Nevertheless, Gale requested "all costs" and

claimed they totaled $2,600. And in <u>Francis v. Wash. State Dep't of Corrections</u>, ___ Wn. App. ___, 313 P.3d 457 (2013), Division Two of this court rejected the same argument the City makes here. In <u>Francis</u>, neither party disputed that the Department should have disclosed certain records to Francis, but the trial court still denied Francis's request for costs. <u>Francis</u>, 313 P.3d at 469. Francis appealed, and Division Two rejected the Department's argument that Francis failed to submit a cost affidavit to the trial court:

> The Department also argues that Francis is not entitled to costs because he did not submit a cost bill to the trial court. According to CR 54(d),
>> [i]f the party to whom costs are awarded does not file a cost bill or an affidavit detailing disbursements within 10 days after the entry of the judgment, the clerk shall tax costs and disbursements pursuant to CR 78(e).
>
> CR 78(e), in turn, only allows limited types of costs if "the party to whom costs are awarded" fails to file a cost bill within the same 10-day period. As just noted, the trial court did not award costs to Francis. Therefore, neither of these provisions applies to him at this point. Further, we have held that "[a]bsent clear language to the contrary, we will not mechanically apply CR 78(e) to deprive a litigant of costs to which he is justly entitled." <u>Mitchell [v. Washington State Inst. of Pub. Policy, 153 Wn. App. 803, 823, 225 P.3d 280 (2009)]</u>.
>
> <u>Francis was entitled to an award of costs under RCW 42.56.550(4), and he was under no duty to file a cost bill when the court denied him costs</u>. We therefore reverse the denial of costs and remand with instructions to award Francis his reasonable costs incurred in litigating this matter.

<u>Francis</u>, 313 P.3d at 469-70 (emphasis added).

The court awarded Gale his filing fee. It is unclear from this record whether he submitted a cost bill under CR 54(d). Because Gale is entitled to "all costs" of litigation under RCW 42.45.550(4), we remand with instructions to award Gale his reasonable

costs incurred in litigating this matter conditioned on his filing of an itemized cost affidavit in the trial court.[23]

## CR 11 Sanctions

Gale contends the trial court erred by not imposing CR 11 sanctions on the City "for proffering arguments clearly not based in fact or on existing law" and "for proffering arguments 'to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" Appellant's Br. at 39.

A party seeking CR 11 sanctions must notify the court and the offending party promptly upon discovering a basis for doing so. Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 224, 829 P.2d 1099 (1992). "Both practitioners and judges who perceive a possible violation of CR 11 must bring it to the offending party's attention as soon as possible." Biggs v. Vail, 124 Wn.2d 193, 198, 876 P.2d 448 (1994). At no point in this litigation did Gale or the court inform the City of a possible CR 11 violation.[24] Gale is not entitled to CR 11 sanctions against the City.[25]

---

[23] Neither party requests an award of fees or costs on appeal.

[24] Gale admits that he failed to raise the CR 11 issue below, but he claims, "The extensive and continuing nature of CR 11 violations were not apparent to [me] until after the trial court gave its ruling." He also argues, without citation to authority, that "the City, and its attorneys, should be held to a higher standard of conduct" in this case. Appellant's Reply Br. at 24. These arguments do not justify considering the issue for the first time on appeal. See RAP 2.5(a) (An appellate court "may refuse to review any claim of error which was not raised in the trial court."); Beal v. City of Seattle, 134 Wn.2d 769, 777 n.2, 954 P.2d 237 (1998) ("The City cites no authority for this proposition and, thus, it is not properly before us.") (citing RAP 10.3(a)(5); Schmidt v. Cornerstone Invs., Inc., 115 Wn.2d 148, 166, 795 P.2d 1143 (1990)).

[25] Further, "[t]he determination whether a violation of CR 11 has occurred is vested in the sound discretion of the trial court." Doe v. Spokane & Inland Empire Blood Bank, 55 Wn. App. 106, 110, 780 P.2d 853 (1989). Gale provides no analysis showing

<u>CONCLUSION</u>

Because (1) the record supports the trial court's determinations regarding PRA compliance, penalties, and costs and (2) Gale's remaining arguments were not raised below and are insufficiently argued on appeal, we affirm but remand to the trial court solely to determine Gale's reasonable costs incurred in litigating this matter in the trial court and conditioned on his submission of an itemized cost affidavit.

_Jan, J._

WE CONCUR:

_Cox, J._                    _Becker, J._

---

that even if he had properly notified the City that he intended to seek CR 11 sanctions, the court abused its discretion in declining to impose such sanctions. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 385 (2011) (declining to consider an inadequately briefed argument).