[Nos. 42478-9-II; 42485-1-II.   Division Two.   February 12, 2013.]

GEORGE BARTZ, *Appellant*, v. THE DEPARTMENT OF CORRECTIONS PUBLIC DISCLOSURE UNIT, *Respondent*.

*George Bartz*, pro se.

*Robert W. Ferguson, Attorney General,* and *Candie M. Dibble* and *Ohad M. Lowy, Assistants,* for respondent.

¶1 HUNT, J. — George Bartz appeals the superior court's Order of Findings in his first Public Records Act (PRA)[1] complaint and its Findings and Order of Dismissal in his second PRA complaint. He argues that the superior court erred in ruling that (1) the Department of Corrections (DOC) had complied with his public records requests, (2) his second complaint was unnecessary to obtain the information requested, (3) the PRA's statute of limitations barred his second complaint, and (4) his second complaint was a "frivolous" action for the purposes of RCW 4.24.430.[2] He further argues that the superior court erred in dismissing with prejudice his second complaint. We affirm the superior court's findings related to Bartz's first complaint and its dismissal of his second complaint. But we reverse the superior court's determination that his second complaint

---

[1] Ch. 42.56 RCW.

[2] The parties and trial court refer to this as "Substitute House Bill 1037," since codified as RCW 4.24.430.

was "frivolous" and that it was a "strike" for purposes of RCW 4.24.430.[3] Clerk's Papers (CP) at 37.

## FACTS

¶2 George Bartz is an inmate in DOC custody who filed three public records requests with DOC under the PRA. He later filed two superior court complaints based on what he perceived to be DOC's incomplete or improper responses to his PRA requests. The superior court ruled that DOC had complied with Bartz's requests and that the statute of limitations barred his second complaint.

### I. PRA REQUESTS

### A. First Request

¶3 On June 12, 2009, Bartz filed his first public records request with DOC's Public Disclosure Unit (PDU), requesting six groups of documents relating to inmate personal clothing. Specifically, Bartz requested (1) all documents "used by Eldon Vail, Secretary DOC, in his references to saving the Department 'six figures' by taking away personal clothing from inmates"; (2) all documents relating to the maintenance costs of washing machines used by inmates for personal clothing; (3) all documents relating to projected cost increases of "doing laundry for inmates after personal clothing is taken"; (4) all documents that show the costs of laundry services for 2007 and 2008; (5) all documents that show actual or projected cost of providing inmates with "sweat shirts, sweat pants, [pajamas], night gowns, bathrobes, shorts and any other new clothing items the Department intends to issue inmates"; and (6) all documents that show the "proposed cost of fighting possible

---

[3] We accept DOC's concession that Bartz's second complaint was not a frivolous action under RCW 4.24.430, which disallows waiver of a filing fee for a prisoner's third frivolous PRA-based complaint.

litigation due to the implementation of the proposed matrix change."[4] CP at 9.

¶4 Twelve days later, on June 24, DOC assigned Bartz's PRA request tracking number PDU-7362. Approximately two weeks later, DOC sent Bartz a letter stating that it had gathered 250 pages for the first installment and that it would send these pages to Bartz once he sent the $52.07 payment. Bartz responded to DOC by letter on July 13, (1) taking exception to DOC's "piece-meal" response and high number of pages, (2) sending no money to pay for the copies ready in the first installment, and (3) explaining that he would "await [DOC's] response . . . and then submit the funds." CP at 64. DOC responded to Bartz's letter[5] by offering to deduct $18.09 from the outstanding balance on his claim (PDU-7362), leaving $33.98 as the total owed. Bartz then sent DOC a check for $33.98, which DOC received on August 24. That same day, DOC sent Bartz the first installment of the requested records.

¶5 Also on August 24, DOC sent Bartz a letter stating that in response to the second half of his request, it had located 231 pages; DOC also asked for payment of $52.45. Bartz responded in a letter, complaining that the documents in his first installment were not complete, that they were full of duplicates, and that he would file a tort claim. Nevertheless, Bartz sent payment for the documents responding to the second half of his request, again complaining about the first installment and stating his intention to file a lawsuit. On September 9, DOC sent Bartz the second installment of the records, informing him that its response to his PRA request was complete.

---

[4] Except for a reference to "offender personal property matrix" in a letter from DOC to Bartz, the record neither defines nor provides further context for the term "matrix change." CP at 63.

[5] The letter from DOC indicates the deduction is for PDU-7361, but the context makes clear that DOC meant to refer to PDU-7362.

## B. Second Request

¶6 Bartz uses glucosamine/chondroitin to relieve pain from osteoarthritis in his knees. In 2005, DOC stopped providing the glucosamine/chondroitin supplement to inmates. Despite DOC's response to Bartz's inquiries that glucosamine/chondroitin supplements would be added back to the inmate store at some point, it had not happened by fall 2009. On October 4, 2009, Bartz filed a second public records request with DOC about the availability of glucosamine/chondroitin in the inmate store, seeking (1) "all documents, in the form of emails, faxes, letters, or [memos] dealing with the inclusion of the herbal supplement, [g]lucosamine/[c]hondroitin as a salable item by the [i]nmate [s]tores, under the jurisdiction of DOC, by any and all persons employed by DOC"; and (2) "all documents, in the form of emails, faxes, letters, [memos] or policies relating to the sale of 'oils' by inmate stores." CP at 154.

¶7 DOC assigned this PRA request tracking number PDU-8623. DOC sent Bartz notice that it had located 66 pages of responsive records and that it would send the records once he sent payment of $15.61. Bartz sent payment on December 22, 2009; DOC sent the documents on January 4, 2010.

¶8 On January 8, Bartz sent a letter to DOC, (1) alleging that his second records request was incomplete because he had in his possession "emails" between two DOC employees[6] that were not included in the documents he had received, and (2) complaining that he also had received some duplicate documents. CP at 165. DOC responded, asking Bartz to supply the names of the staff and the dates of the missing e-mails so it could perform a search. Bartz refused to provide any identifying information about the

---

[6] These e-mails were not part of the superior court record designated on appeal. Instead, Bartz presents them for the first time as "Exhibit A," attached to his reply brief on appeal, which he refers to as "Plaintiff's Response to Defendant's Brief."

staff or the requested e-mails. On January 28, DOC responded to Bartz again by setting out his request and informing him that although the e-mail strings he possessed had similar information, the pages were not duplicates. According to DOC, it did not receive any more contact from Bartz about this request.[7]

## C. Third Request

¶9 Two weeks after Bartz filed his second PRA request with DOC (October 4, 2009), he filed a third public records request on October 22, broadly outlining four groups of information that he sought about tort claims filed against DOC. Specifically, he requested (1) "all documents/forms relating to TORT claims filed by any inmate within DOC for the years 2007 to date of this letter, that relate to personal clothing claims"; (2) "all documents, in any form, that relate to the cost of the research done to validate TORT claims addressed in GROUP ONE, and the amount of com-

---

[7] In his response to DOC's answer to his complaint filed the following year, however, Bartz attached a letter addressed from him to DOC dated January 24, 2011. In this letter, Bartz apparently made an additional request under the PRA for all e-mails between "R. Kherr, pharmacist (spelling of the last name may be wrong) and other DOC staff members within the Department of Corrections for the years 2005 [through] 2010, concerning the subject; glucosamine/chondroitin." CP at 35. But nothing in the record shows that DOC received this request or, if it did receive it, how DOC responded to this request. At the show cause hearing, also the following year, Bartz testified that the e-mails to which he referred in this January 24, 2011 letter were between Rhonda Kerr and other staff and that after he directed DOC to Rhonda Kerr, he received the requested e-mails and other records from DOC. But Bartz did not introduce these e-mails as exhibits in the show cause hearing.

In his brief of appellant, Bartz claims that (1) DOC assigned this January 24, 2011 e-mail request the tracking number PDU-14117, (2) he received two more groups of documents in response to his PRA request, and (3) the second batch contained the e-mails he sought. Because Bartz has not properly designated this letter and these e-mails as part of the record before us on appeal, we do not consider his arguments based on this alleged evidence outside the record before us. *See* RAP 9.6, 10.3(c), (a)(8) ("An appendix may not include materials not contained in the record on review without permission from the appellate court."); *Witt v. Young*, 168 Wn. App. 211, 214 n.5, 275 P.3d 1218 ("Although Witt attached a copy of her claim as an exhibit to her brief, this document has not been included in the clerk's papers, and Witt's attachment is not properly before us." (citation omitted)), *review denied*, 175 Wn.2d 1026 (2012).

pensation paid on all valid claims, if it is not listed on the claims form"; (3) information about "the total number of claims investigated under GROUP ONE. Documents relating to claims found invalid are not requested, nor wanted, just the number of claims investigated"; and (4) "the documentation concerning fees paid for [adjudication] of all valid TORT claims. Differentiate fees paid as to lawyers, by name, amount, and agency worked for or contract status." CP at 12. He also asked DOC to redact information to ensure no duplication of pages. On October 30, DOC assigned his claim tracking number PDU-8827.

¶10 Soon after, DOC sent a letter to Bartz, informing him that his request had generated 1,193 documents, some of which contained information about lawsuits and some of which did not; DOC asked Bartz to clarify whether he wanted only the lawsuit-related documents or all the documents. Bartz responded in a letter, clarifying that he did "not desire actual legal filings made in request for TORT claims, rather only the total number of claims filed during the period requested; budget numbers used to examine and research those claims; fees paid for adjudication and the names of lawyers and their affiliation those lawyers are associated with or law firms they belong to." CP at 93.

¶11 In a separate letter, DOC responded to Bartz that it did not track the information that he sought,[8] but it offered to send what documents it had. Bartz replied, asking for the documents available from DOC and a bill for the records. On January 12, 2010, DOC responded that it had 176 pages that needed reviewing for possible PRA exemptions and that Bartz would receive more information about the status of his request within 35 business days. Bartz replied on January 15, unsatisfied with the 35 business days quoted; he threatened legal action if DOC did not follow the

---

[8] This DOC letter also explained that Bartz might be able to obtain this requested information from its Office of Financial Management (OFM), for which DOC provided the address. The record, however, does not show whether Bartz made such a PRA request to the OFM for the information he had sought from DOC or that the OFM ever received such a request and provided documents to Bartz.

"statute." CP at 102. DOC responded on January 27, reiterating that the documents needed reviewing for possible redactions; DOC also provided Bartz with an address if he wished to appeal.

¶12 On January 31, Bartz sent an appeal to DOC, stating that the offered time frame did not comply with chapter 42.56 RCW. DOC responded on February 18, informing him that the five-business-day limit was only for acknowledgement of the request, not for fulfillment of the request. The letter told Bartz to expect further communication on or before March 4, 2010. Bartz received a letter on March 4, informing him that DOC needed another 15 business days for further review.

¶13 On March 9, DOC sent Bartz a letter notifying him that the 176 pages were ready and that it would send him the pages when he sent his payment of $40.10. The letter also informed Bartz that DOC would notify him when another installment was ready. On March 12, Bartz sent DOC a check for $40.10 (received by DOC on March 30). Bartz complained that the request would be in installments and again threatened to file a lawsuit. On April 6, DOC sent Bartz the 176 pages he requested.

¶14 Also on April 6, DOC sent a separate letter stating it was processing the second installment for Bartz's request and would follow up with him within 35 business days. On May 24, DOC notified Bartz that it would send the second installment of 268 pages once Bartz paid $59.30. Bartz paid the $59.30 on May 30 and again complained about the length of the installment process. DOC sent the second installment of 268 pages on June 15, 2010, and informed Bartz that it would contact him about the third installment on or before July 22.

¶15 On July 16, DOC notified Bartz that a third installment of 328 pages, requiring payment of $72.05, was available. This letter stated that additional records would be available in more installments, but DOC would not gather them until it received payment for the current

installment. Bartz responded on July 20 with a letter claiming that these installments were not a reasonable delay allowed by chapter 42.56 RCW; he again threatened to take legal action. Bartz did not provide payment for this third installment and did not receive it.

## II. PROCEDURE

¶16 On October 19, 2010, Bartz filed a motion for judicial review under the PRA,[9] asking the superior court to require DOC (1) to show cause why it had "refused to provide" full responses to his first and third public records requests (PDU-7362 and PDU-8827) in a timely manner and why it had sent duplicates, blank pages, and unrelated information; and (2) to pay him for each day it had failed to comply with chapter 42.56 RCW beyond the five days allowed and all costs, including reasonable attorney fees. CP at 3.

### A. Complaints

¶17 On January 19, 2011, Bartz filed a complaint in Thurston County Superior Court, cause no. 10-2-02314-1, alleging that DOC had violated the PRA in responding to his first and third PRA requests (PDU-7362 and PDU-8827). He asked the court to acknowledge that (1) DOC "failed to disclose part or all of GROUPS 1,3,4,5,6 and must complete these groups within 30 working days"; (2) "although DOC was notified of their short comings they failed to make any attempt to complete PDU-7362"; and (3) "DOC is delinquent and stipulate a penalty at the high end of the . . . monetary award stipulated in RCW 42.56, for each group of records not

---

[9] RCW 42.56.550(1) provides:

Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record.

The legislature amended RCW 42.56.550 on July 22, 2011, but these amendments do not affect this provision or our resolution of the issues of this case. LAWS OF 2011, ch. 273, § 1.

completed from the date of the last disclosure until such date as the records are produced, to the petitioner's and court[']s satisfaction." CP at 17. DOC argued that Bartz had failed to show a violation of the PRA and that its response to his request amounted to bad faith. Bartz responded that DOC had violated the PRA in bad faith.

¶18 On March 24, Bartz filed a second complaint, cause no. 11-2-00712-7, alleging that DOC had violated the PRA in responding to his second request, PDU-8623. DOC responded, arguing that (1) Bartz could not recover PRA penalties because his lawsuit was not necessary to obtain the requested records, (2) the statute of limitations barred Bartz's action, (3) Bartz failed to show that DOC's response amounted to bad faith, and (4) the court should dismiss his case with prejudice. In response, Bartz asked the court (1) to recognize that DOC had not disclosed all requested documents; (2) to recognize that DOC "acted with disregard for the intent of the PRA, even after being advised that the request was not complete"; (3) to recognize his attempt to settle with defense counsel; and (4) to award him money damages. CP at 29.

## B. Show Cause Hearing

¶19 On July 22, the superior court conducted a show cause hearing for both cause numbers. At the end of this show cause hearing, the superior court ruled that DOC had reasonably complied with all of Bartz's PRA requests.

### 1. First complaint (cause no. 10-2-02314-1)

¶20 Bartz's first complaint, cause no. 10-2-02314-1, addressed Bartz's first and third PRA requests (PDU-7362 and PDU-8827). For Bartz's first PRA request, PDU-7362, the superior court found that Bartz had received the requested six groups of documents in two installments, that he had not appealed, and that DOC had reasonably believed it had provided all responsive documents and closed the

file.[10] For Bartz's third PRA request, PDU-8827, the superior court found that Bartz had received the first two installments and that he had not yet received the third installment because he had not paid for it; therefore, DOC did not have to send the records. The superior court ruled that DOC had complied with both Bartz's first and third PRA requests (PDU-7362 and PDU-8827), and it awarded DOC $200 in statutory attorney fees.

### 2. Second complaint (cause no. 11-2-00712-7)

¶21 Bartz's second complaint, cause no. 11-2-00712-7, addressed his second PRA request (PDU-8623). The superior court found that (1) DOC had provided Bartz the two e-mails he had requested; (2) Bartz had received these e-mails before filing this complaint; (3) Bartz had refused to provide information to assist DOC in finding these e-mails; (4) his complaint "was not reasonably regarded as necessary to obtain the records" and was "frivolous"; and (5) because Bartz had filed his action after the one-year statute of limitations, his action was time barred. CP at 37.

¶22 The superior court also ruled that because Bartz already possessed the two e-mails he sought from Rhonda Kerr, he could not sue DOC for failing to receive them in a PRA request and his second complaint was "frivolous." Verbatim Report of Proceedings (VRP) at 38. The court admonished Bartz for playing "hide the ball" by not cooperating with DOC, stating, "[H]is response that 'I won't tell you what I really want you to give me,' is not appropriate. I think they fully responded to it. . . . He already had [the e-mails] and, further, I find it is time-barred so I will have to dismiss this action at this time." VRP at 38, 39. In addition to dismissing Bartz's second complaint with prejudice for failure to state a claim on which relief may be

---

[10] More specifically, the superior court ruled that because DOC had received no further communication from Bartz about his first PRA request and had filed a different PRA request (PDU-8827 on tort claims), DOC acted reasonably in thinking it had answered the request fully.

granted and as time barred, the superior court (1) awarded statutory attorney fees of $200 to DOC as the prevailing party and (2) found his complaint "frivolous" for RCW 4.24.430 purposes. CP at 37.

¶23 Bartz appeals.

## ANALYSIS

### DISMISSAL OF BARTZ'S SECOND COMPLAINT

¶24 Bartz argues that the superior court erred in dismissing his second complaint. More specifically, he contends the superior court erred in ruling that his second complaint was unnecessary to obtain the records requested and that the statute of limitations barred his second complaint. We agree with Bartz that the second complaint was necessary to obtain the records requested, but we disagree that the superior court erred in ruling the statute of limitations barred Bartz's complaint. Thus, we affirm the superior court's dismissal of his second complaint as time barred and, alternatively, for failure to state a claim under CR 12(b)(6).

### A. Standard of Review

¶25 We review de novo a trial court's dismissal of an action. *Johnson v. Dep't of Corr.*, 164 Wn. App. 769, 775, 265 P.3d 216 (2011), *review denied*, 173 Wn.2d 1032 (2012). We may affirm the trial court on any ground that the record supports. *Johnson*, 164 Wn. App. at 779 (citing *Otis Hous. Ass'n v. Ha*, 165 Wn.2d 582, 587, 201 P.3d 309 (2009)). "A trial court should grant a motion to dismiss pursuant to CR 12(b)(6) only 'if it appears beyond a reasonable doubt that no facts exist that would justify recovery.' " *Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 376, 166 P.3d 662 (2007) (quoting *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994)).

## B. Statute of Limitations Dismissal

¶26 Bartz argues that the superior court erred in ruling (1) that RCW 42.56.550(6),[11] the applicable one-year statute of limitations, barred his second complaint and (2) that this statute "should be narrowly confined to ensure that persons get timely and appropriate responses to their requests." CP at 37. We disagree.

¶27 The PRA's statute of limitations requires a plaintiff to file an action within one year of either (1) an agency's claim of exemption from the PRA's disclosure requirements or (2) an agency's " 'last production of a record on a partial or installment basis.' " *Johnson*, 164 Wn. App. at 775 (quoting RCW 42.56.550(6)). Because DOC did not claim a PRA exemption to Bartz's second PRA request (PDU-8623) as the basis for his second complaint, the first portion of the statute of limitations does not apply.

¶28 But rather than addressing the second portion of this statute of limitations, dealing with an agency's "last production of a record,"[12] Bartz appears to argue that the statute of limitations did not prevent his claim because DOC did not provide him with a "detailed privilege log." Br. of Appellant at 9. For authority, he cites *Rental Housing Ass'n of Puget Sound v. City of Des Moines*, which held that, for PRA statute of limitations purposes, an exemption claim exists only after an agency produces a privilege log to a requesting party. 165 Wn.2d 525, 538-39, 199 P.3d 393 (2009). *Rental Housing Ass'n* does not control here[13] be-

---

[11] Changes to RCW 42.56.550 not affecting the resolution of the issues of this case took effect on July 22, 2011, the date of the bench trial. Laws of 2011, ch. 273, § 1.

[12] RCW 42.56.550(6).

[13] The court found PRA violations in *Rental Housing Ass'n* because the City of Des Moines had withheld several documents, claiming exemptions in response to a PRA request. But it did not provide a log outlining its exemptions. *Rental Hous. Ass'n*, 165 Wn.2d at 528-29.

cause DOC claimed no exemptions and, thus, Bartz's case involved no exemption logs.[14]

¶29 The PRA anticipates disclosure of documents on an installment basis: RCW 42.56.550(6) provides that an agency's "last production of a record on a partial or installment basis" triggers the statute of limitations. Because Bartz received only one installment, it is not clear whether the second portion of RCW 42.56.550(6) applies. We addressed a similar situation in *Johnson* where the question was whether an agency's production of a single document triggered the running of the PRA's statute of limitations. *Johnson*, 164 Wn. App. at 777. We did not reach and decide the applicability of the PRA's statute of limitations to production of a single document because Johnson's claim was barred by a two-year catchall statute of limitations, RCW 4.16.130. *Johnson*, 164 Wn. App. at 778.

¶30 Bartz filed his claim more than one year, but less than two years, after DOC's last disclosure under PDU-8623.[15] Thus, we must decide whether (1) Bartz's action was time barred because DOC triggered the one-year statute of limitations, RCW 42.56.550(6), with its production of one installment of documents; or (2) Bartz's action was not time barred because there is no statute of limitations that applies to a PRA action based on an agency's production of a single installment. Following our reasoning in *Johnson*, we reject the second alternative because it would be an absurd result to conclude that the legislature intended no statute of limitations for PRA actions involving the production of a single volume of documents. *Johnson*,

---

[14] Bartz's argument that the statute of limitations will never begin tolling until an agency supplies an exemption log also ignores the second half of RCW 42.56.550(6), which focuses on the last production of a record. Contrary to RAP 10.3(a)(6), Bartz provides no argument about why this second portion of the statute of limitations does not apply. Therefore, we do not further address this argument. *See Watson v. Maier*, 64 Wn. App. 889, 899, 827 P.2d 311 (1992) ("Assignments of error lacking argument or citation to authority will not be considered by the courts of appeals.").

[15] DOC sent the records in one installment on January 4, 2010. Bartz did not file his complaint until March 24, 2011.

164 Wn. App. at 777; *see also Cannon v. Dep't of Licensing*, 147 Wn.2d 41, 57, 50 P.3d 627 (2002) ("This court will avoid a literal reading of a provision if it would result in unlikely, absurd, or strained consequences."). It would also be absurd to conclude that the legislature intended to create a more lenient statute of limitations for one category of PRA requests in light of its 2005 deliberate and significant shortening of the time for filing a claim from five years, under the old public disclosure act,[16] to one year, under the PRA.[17]

¶31 Division One of this court faced a similar fact pattern in *Tobin v. Worden*, 156 Wn. App. 507, 233 P.3d 906 (2010). Similar to *Johnson*, an agency provided a single document in response to Tobin's PRA request, without claiming exemptions. *Tobin*, 156 Wn. App. at 510. Division One held that the one-year statute of limitations was never triggered because the single document received was the "requested record in its entirety, not a partial production of a larger set of requested records." *Tobin*, 156 Wn. App. at 514. The *Tobin* court ruled that "production of a record on a partial or installment basis" in RCW 42.56.550(6) could be construed to apply only to production of a record that is " 'part of a larger set of requested records.' " *Tobin*, 156 Wn. App. at 514 (quoting RCW 42.56.080).[18]

¶32 DOC argues that (1) we should disagree with and reject Division One's holding in *Tobin*, (2) the logical conclusion is that the legislature intended single productions of records to "fall within the scope of 'last production on a . . .

---

[16] Former RCW 42.17.410 (2005) provided: "Any action brought under the provisions of this chapter must be commenced within five years after the date when the violation occurred."

[17] In 2005, the legislature amended RCW 42.56.550 to include subsection (6), superseding former RCW 42.17.410. Laws of 2005, ch. 483, § 5.

[18] The *Tobin* court did not mention the two-year catchall statute of limitations that we discussed in *Johnson*. Tobin filed her PRA request on June 2, 2005. She filed her complaint more than two years later on August 27, 2007. *Tobin*, 156 Wn. App. at 510, 512. But it is unclear from the opinion when Tobin received the requested documents, so we cannot know whether she filed her complaint within two years of receiving the document.

partial basis' " for purpose of the PRA statute of limitations, and (3) we should hold that the one-year PRA statute of limitations barred Bartz's claim. Br. of Resp't at 16 (quoting RCW 42.56.550(6)). For further support, DOC cites case law favoring this interpretation.[19] We agree. Rather than following Division One's holding in *Tobin*, we adhere to our reasoning in *Johnson*: The legislature intended that the PRA's one-year statute of limitations would apply to PRA requests completed by an agency's single production of records. *Johnson*, 164 Wn. App. at 777. Although a literal reading of RCW 42.56.550(6) does not encompass documents disclosed in a single production, we need not follow a literal reading of a statute if it would yield an absurd result. *Cannon*, 147 Wn.2d at 57. On the contrary, we reiterate that we avoid readings that lead to absurd results. *Cannon*, 147 Wn.2d at 57. Accordingly, under *Johnson*, we hold that the PRA one-year statute of limitations barred Bartz's second complaint and, therefore, the superior court properly dismissed it with prejudice as untimely.

### C. CR 12(b)(6) Dismissal

¶33 The superior court also (1) ruled that because Bartz already possessed the two e-mails that he sought as part of his second PRA request before he filed his second lawsuit, the action was "not reasonably regarded as necessary to obtain the records"; and (2) dismissed Bartz's second complaint with prejudice for failure to state a claim on which relief may be granted. CP at 37. Bartz argues that this ruling contravenes *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 261 P.3d 119 (2011). DOC concedes that Bartz is correct.

¶34 We agree with the parties' characterization of part of the Supreme Court's decision in *Neighborhood*

---

[19] "The 'obvious' purpose of such statutes is to set a definite limitation on the time available to bring an action, without consideration of the merit of the underlying action." Br. of Resp't at 13 (citing *Dodson v. Cont'l Can Co.*, 159 Wash. 589, 596, 294 P. 265 (1930)).

*Alliance,* holding that the fact "that the requesting party possesses the documents does not relieve an agency of its statutory duties, nor diminish the statutory remedies allowed if the agency fails to fulfill those duties." *Neighborhood Alliance,* 172 Wn.2d at 727. And we agree with the parties that the superior court erred in articulating Bartz's possession of the documents as the first basis for its ruling that Bartz's PRA request to obtain these documents from DOC was not necessary. But this agreement does not resolve the issue before us.

¶35 We hold that *Neighborhood Alliance* supports the superior court's dismissal of Bartz's complaint on its other articulated grounds, based on the following explanation:

> [T]he remedial provisions of the PRA are triggered when an agency fails to properly disclose and produce records, and any intervening disclosure serves only to stop the clock on daily penalties, rather than to eviscerate the remedial provisions altogether.

*Neighborhood Alliance,* 172 Wn.2d at 727. As *Neighborhood Alliance* makes clear, it is an agency's failure *to produce* records properly that violates the PRA, regardless of what documents the requester possesses. *Neighborhood Alliance,* 172 Wn.2d at 727. Here, as we have already held, DOC did not fail to produce requested records.

¶36 On the contrary, the record shows that (1) DOC made multiple attempts to produce the requested records, even asking Bartz to provide specific names and dates for the e-mails he was seeking and performing another futile search when he refused to supply this information;[20] and (2) DOC responded promptly[21] to every letter Bartz sent involving this PRA request. Bartz did not establish that DOC withheld any responsive records. Therefore, *Neighborhood Alliance* does not require reversal and remand.

---

[20] Moreover, Bartz did not provide the superior court with the e-mails he had purportedly sought from DOC and that he alleged existed.

[21] The longest period Bartz waited for a response (not including mailing time) was 11 days, only 6 of which were business days.

¶37 Furthermore, the superior court's second basis for dismissal, CR 12(b)(6), was also proper. Because Bartz failed to show that DOC had inadequately responded to his PRA request, he failed to establish a controversy in issue, making dismissal by the superior court with prejudice proper under CR 12(b)(6). Therefore, we affirm the superior court's dismissal with prejudice of Bartz's second complaint.

¶38 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

VAN DEREN, J., and BRIDGEWATER, J. PRO TEM., concur.

Review denied at 177 Wn.2d 1024 (2013).