IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JEFFREY MCKEE, | ) | |
| | ) | No. 33876-2-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | UNPUBLISHED OPINION |
| OF CORRECTIONS, a subdivision of the | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — Coyote Ridge Correctional Center inmate Jeffrey McKee filed

suit alleging violations of the Public Records Act, chapter 42.56 RCW. The trial court

dismissed the suit. We principally affirm the trial court, but remand the case for the trial

court to review one claim.

FACTS

Jeffrey McKee resides at Connell's Coyote Ridge Corrections Center. On

November 10, 2014, Coyote Ridge Classification Counselor Andrea Husky summoned

McKee into her office and asked him to sign a document entitled "Classification Hearing Notice/Appearance Waiver." The correction facility's Facility Risk Management Team periodically conducts a classification hearing to update an offender's security ranking. A signature on the document confirms the prisoner's notice of the hearing time. Jeffrey McKee signed the document and requested from Husky a copy of the document. Andrea Husky told McKee that he must seek a copy from the Washington Department of Corrections Public Disclosure Unit in Olympia.

On November 24, 2014, Jeffrey McKee submitted to Coyote Ridge Corrections Center a Request for Disclosure of Records on a public records request form prepared by the Department of Corrections. He requested more than the notice and waiver form he signed on November 10. On the records request form, McKee checked the box next to "I request to inspect my central file." Clerk's Papers (CP) at 38. The law does not define or describe an incarcerated offender's "central file." The central file includes, among other documents, the offender's criminal conviction record packet. That packet, in turn, contains the offender's criminal history as obtained from the Washington State Patrol and the Federal Bureau of Investigation at the time of the offender's admission to Department of Corrections' custody and updated information about the offender generated as part of the department's annual reviews. The department also refers to the central file as an "offender file" or an "offender central file." CP at 28.

In his November 24 request for public records, Jeffrey McKee also hand wrote:

2

I am requesting "a review of all pertinent official records in the offender file" pursuant to the classification notice/appearance waiver DOC form 05-794 for my November [Facility Risk Management Team] meeting.

CP at 38. Dena Leaverton, a Coyote Ridge records technician, handled the request. She later testified that she did not understand what McKee intended by "'pertinent official records.'" CP at 29. Leaverton returned McKee's request to McKee the following day with the response:

Per WAC 137-08-090 Public Disclosure Requests must be submitted through U.S. Mail:
    Public Disclosure Unit
    Department of Corrections
    P.O. Box 41118
    Olympia, WA 98504

CP at 37-38. Leaverton's response also contained a handwritten note that read: "If you want more than this one document please re-kite for central file review." CP at 38. A kite is a written communication within the prison.

On December 1, 2014, Classification Counselor Andrea Husky again summoned Jeffrey McKee to her office and asked him to sign another Classification Hearing Notice/Appearance Waiver for a classification hearing on December 3. The appellate record contains a copy of this notice and waiver, but not the notice and waiver signed by Jeffrey McKee on November 10. We do not know if the notice and waiver signed on November 10 was also for a December 3 hearing or an earlier hearing. The December 1 notice and waiver read, in part: "You have the right to submit a written request for a

3

review of all pertinent official records in the offender file through the Records Manager,

using DOC 05-066 Request for Disclosure of Records." CP at 119.

On December 1, 2014, Jeffrey McKee completed and submitted to Coyote Ridge a

request for disclosure of records on a form prepared by the Department of Corrections.

The December 1 request echoed the November 24 request. In the December 1 request,

McKee sought his "central file." CP at 41. He also wrote:

> Per the classification hearing notice/appearance waiver I signed
> today I am requesting "a review of all pertinent official records in the
> offender file" prior to my 12/3/14 FRMT meeting/review. Thank you.

CP at 41. Dena Leaverton, the Coyote Ridge records technician, received the request on

December 3. Leaverton again stamped the following response:

> Per WAC 137-08-090 Public Disclosure Requests must be submitted
> through U.S. Mail:
> > Public Disclosure Unit
> > Department of Corrections
> > P.O. Box 41118
> > Olympia, WA 98504

CP at 40.

On December 28, 2014, Jeffrey McKee prepared a third records request that he

sent to the Department of Corrections Public Disclosure Unit in Olympia. The third

request was the first request he sent to Olympia. The public disclosure unit received the

request on January 5, 2015. The request was in the form of a letter rather than contained

on the Department of Corrections records request form. The December 28 request read:

4

By this letter and pursuant to the Public Records Act I am requesting to "a review of all pertinent official records in the offender file" pursuant to DOC form 05-066 related to the 1/24/14 FRMT notice I received on or about 11/24/14 and on or about 12/1/14.

CP at 110.

Department of Corrections Public Disclosure Specialist Cary Nagel handled Jeffrey McKee's December 28 request. On January 6, 2015, Nagel sent a response to McKee that read in part:

If you are requesting to review records in your central or "offender file" you must process your request through the records department at your parent facility. You will then be scheduled for review of your file within 30 business days. You will then be placed on the Call-Out list for your place and time to review documents.

If there are specific copies of documents that you want and do not need an entire central file review, notify the Records Department that you are cancelling the request for the central file review. If you are requesting copies of specific documents in your Central File, please define what is meant by "pertinent official records." Upon receipt of your clarification we will proceed with your request.

If no correspondence is received within 30 days of this letter your request will be closed.

CP at 114.

Jeffrey McKee never responded to Cary Nagel's request for clarification. According to McKee, he refrained from replying because Nagel's letter was confusing, Nagel's request for clarification was puzzling since McKee parroted the department's own language of "pertinent official records," and McKee hoped to inspect all records during the later central file review in Connell. CP at 116.

5

Cary Nagel also contacted Coyote Ridge Corrections Center and scheduled an appointment for Jeffrey McKee to review his central file. In turn, Dena Leaverton sent McKee a notice that the department would schedule him for a review of his central file within thirty business days. On January 22, 2015, Jeffrey McKee reviewed his central file. McKee then noticed the file contained no criminal rap sheets. According to McKee, the file clerks, with whom McKee met, told him that the produced file did not include his electronic file. McKee asked if the produced file included records pertinent to the November 10 or December 1 notices of hearing. Each clerk indicated she did not know.

During the January 22 records review, the Department of Corrections provided Jeffrey McKee an exemption log that identified documents redacted or withheld. Redactions included the names of McKee's rape victims found in his judgments and sentences and in the appellate decision affirming a conviction. The department also withheld e-mail sent between "Bowman and Brooks" from December 20, 2010 to January 6, 2011. CP at 47. The department asserted that the attorney-client privilege exempted the e-mail.

## PROCEDURE

Jeffrey McKee sued the Department of Corrections. He alleged violations of the Public Records Act for the failure to respond to his requests, the withholding of records, the failure to provide an exemption log justifying the withholding of records, improper redaction of documents, and the department acting in bad faith.

6

The Department of Corrections brought a motion asking "for an order determining whether there has been a violation of the Public Records Act (PRA) pursuant to RCW 42.56.550." CP at 1. The department captioned its motion as a "motion to show cause," and the motion's legal argument impliedly contended that the court should conduct a show cause hearing. CP at 1. In support of the motion, the department filed declarations of Public Records Officer and Compliance Manager Teresa Pernula, Dena Leaverton, and Cary Nagel. In its motion, the department alternatively argued that it committed no violation of the Public Records Act, any violation was without bad faith, and any bad faith violation merited only nominal penalties.

Jeffrey McKee did not object to the trial court conducting a show cause hearing. McKee analyzed the Department of Corrections' motion as if it was a summary judgment motion. McKee did not file a countervailing motion. Jeffrey McKee did not seek a hearing with live testimony.

The trial court entertained oral argument in support of and in opposition to the Department of Corrections' motion for show cause. Neither party sent this court a transcript of the oral argument.

The trial court granted the Department of Corrections' motion and dismissed the case with prejudice. In granting the motion, the trial court entered the following findings of fact:

1. On November 24, 2014, Plaintiff submitted an Offender's Kite to

7

the Coyote Ridge Correctional Center Records Department with a copy of the Request for Disclosure of Records (DOC form 05-066) marked "I request to inspect my central file" and requesting "a review of all pertinent official records in the offender file." As it was unclear to the records technician what "pertinent official records" were, she responded "per WAC 137-08-090 Public Disclosure Requests must be submitted through the U.S. mail: Public Disclosure Unit" in Olympia, Washington.

2. On December 1, 2014[,] Plaintiff submitted another Offender's Kite to the Records Department with a copy of the Request for Disclosure of Records (DOC form 05-066) asking for confirmation of the receipt regarding his Request for Disclosure of Records DOC form 05-066. Plaintiff requested, "per the classification Hearing Notice/Appearance waiver I signed today I am requesting "a review of all pertinent official records in the offender file" and marked "I request to inspect my central file." The records technician responded to his kite and Request for Disclosure of Records on December 3, 2014[,] with the same response as the November 24, 2014 request.

3. On January 5, 2015, the Unit received Plaintiff's request for "a review of all pertinent official records in the offender file." Pursuant to DOC form 05-066 related to the 1/24/14 FRMT notice I received on or about 11/24/14 and on or about 12/1/14." The request was assigned to Specialist Nagel. The next day, Nagel sent a response letter indicating the request had been assigned tracking number PDU-32422 and asking Plaintiff for clarification of "pertinent official records" in the offender file. The Plaintiff never responded to the clarification letter.

4. In order to provide Plaintiff assistance, the following day Nagel took the initiative to expedite his request for an offender central file review and contacted the facility to schedule an appointment for him to review his central file and place him on the Call-Out list. The same day, the records technician also sent a Central File Review Response Letter to Plaintiff which stated he would be scheduled for review of his file in 30 business days.

5. The records technician reviewed and prepared Plaintiff's central file. The central file review did not contain records located in Plaintiff's electronic file. On January 22, 2015, Plaintiff was given access to his central file and provided with an exemption log identifying any documents redacted or withheld. The exemption log noted documents were redacted as exempt from disclosure under RCW 42.56.240(4) for containing computer security information, RCW42.56.070(1) and Title 5, Section

8

552(a) for containing social security numbers and RCW 42.56.240 for containing victim information. The exemption log also noted four pages of documents were withheld in their entirety because they contained emails protected under attorney client privilege as exempt under RCW 42.56.240(2) and RCW 42.56.240(5).

　　6. Documents redacted under RCW 42.56.240 for containing victim information included a published Court of Appeals decision, Plaintiff's Judgment and Sentence and form DOC 12-761, Prohibited Contact Review.

CP at 247-48.

The trial court also entered the following conclusions of law:

　　1. Defendant did not violate the Public Records Act as it sent Plaintiff a letter seeking clarification of his public records request and Plaintiff failed to respond to the letter;

　　2. Defendant did not violate the Public Records Act when it redacted Plaintiff's victim information in the documents located in Plaintiff's offender central file. Requiring the Defendant to parse out individual victim information would place the Defendant in an untenable position of responding based on who the requestor is which is not authorized by statute.

CP at 248. The order signed by the trial court was captioned Order Granting Defendant's Motion to Show Cause, and the body of the order declares that the court granted the department's motion to show cause.

## LAW AND ANALYSIS

*Issue 1: Should this court defer to a trial court's finding of fact in a Public Records Act suit, when the trial court issued a ruling based on affidavits rather than live testimony, when the losing party did not ask for live testimony and substantial evidence supports the trial court's finding?*

9

*Answer 1: Yes.*

In finding of fact 1, the trial court found that the Coyote Ridge Correctional Center's records technician Dena Leaverton did not understand what records Jeffrey McKee sought in his November 24, 2014, public records request. The request sought inspection of McKee's central file and a review of all pertinent official records in his offender file. Because of Leaverton's confusion, she directed McKee to address his request to the Department of Corrections Public Disclosure Unit in Olympia.

Important to our decision is whether we decide anew whether Dena Leaverton understood Jeffrey McKee's request or whether we defer to the trial court's finding of fact 1 that Leaverton was confused. The answer to this question hinges on what procedure or procedures are available to the trial court in resolving a Public Records Act suit. If we did not defer to the trial court's finding of fact, we would hold that a question of fact exists as to whether Leaverton was confused or was reasonably confused, and we would remand the case for an evidentiary hearing. Nevertheless, since the Department of Corrections brought a show cause motion and Jeffrey McKee did not ask for an evidentiary hearing, the trial court was authorized by statute to resolve questions of fact by reviewing only affidavits.

The Public Record Act contains two important passages with regard to the procedure to be used by the trial court and one important passage with regard to the standard of review for courts. RCW 42.56.550(1) authorizes a show cause hearing, and

10

RCW 42.56.550(3) permits the court to resolve a Public Records Act suit on affidavits.

RCW 42.56.550(3) also directs courts to engage in de novo review of an agency action

with regard to a public records request. RCW 42.56.550 reads, in relevant part:

> (1) *Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause* why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.
> . . . .
> (3) *Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo.* Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. Courts may examine any record in camera in any proceeding brought under this section. *The court may conduct a hearing based solely on affidavits.*

(Emphasis added.)

Note that RCW 42.56.550(1) authorizes a show cause hearing, but only when

initiated by the party suing for access to public records. The statute, however, does not

expressly preclude the defending government agency from initiating a show cause

hearing. In at least one Washington decision, the government agency filed the motion to

show cause. *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 862, 288 P.3d 384 (2012).

Jeffrey McKee did not seek an order to show cause or an order on show cause.

Instead, the Department of Corrections filed a motion and characterized its motion as a

11

motion to show cause. The trial court expressly granted the motion to show cause.

Jeffrey McKee did not object to the department employing the show cause procedure, but

analyzed the department's motion as a summary judgment motion. McKee did not seek

an evidentiary hearing.

A Public Records Act suit may be resolved on a CR 12(b)(6) motion to dismiss.

*Nissen v. Pierce County*, 183 Wn.2d 863, 871-72, 357 P.3d 45 (2015). A party may also

seek to prevail in the suit with a summary judgment motion. WAC 44-14-08004(3); *see*

*Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 261 P.3d 119 (2011);

*Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89, 117 P.3d 1117

(2005); *Hangartner v. City of Seattle*, 151 Wn.2d 439, 90 P.3d 26 (2004); *Newman v.*

*King County*, 133 Wn.2d 565, 947 P.2d 712 (1997); *Robbins Geller Rudman & Dowd,*

*LLP v. Office of Att'y Gen.*, 179 Wn. App. 711, 328 P.3d 905 (2014); *Beal v. City of*

*Seattle*, 150 Wn. App. 865, 209 P.3d 872 (2009); *Belenski v. Jefferson County*, 187 Wn.

App. 724, 350 P.3d 689 (2015), *review granted*, 184 Wn.2d 1032, 364 P.3d 120 (2016);

*Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 248 P.3d 150 (2011; *Harley H. Hoppe*

*& Assocs., Inc. v. King County*, 162 Wn. App. 40, 255 P.3d 819 (2011). In one suit, the

trial court resolved the case after a testimonial hearing. *Cowles Publ'g Co. v. State*

*Patrol*, 44 Wn. App. 882, 886, 724 P.2d 379 (1986), *rev'd*, 109 Wn.2d 712, 748 P.2d 597

(1988). Show cause hearings are the usual method of resolving litigation under the

Public Records Act. WAC 44-14-08004; *O'Neill v. City of Shoreline*, 170 Wn.2d 138,

12

153, 240 P.3d 1149 (2010); *West v. Gregoire*, 184 Wn. App. 164, 165, 336 P.3d 110 (2014), *review denied*, 182 Wn.2d 1018, 345 P.3d 784 (2015); *Wood v. Thurston County*, 117 Wn. App. 22, 27, 68 P.3d 1084 (2003); *see Zink v. City of Mesa*, 162 Wn. App. 688, 700, 256 P.3d 384 (2011). A show cause motion is neither a CR 56 motion nor a CR 12(b)(6) motion. *O'Neill v. City of Shoreline*, 145 Wn. App. 913, 939, 187 P.3d 822 (2008), *aff'd in part, rev'd in part on other grounds* by *O'Neill v. City of Shoreline*, 170 Wn.2d 138 (2010).

RCW 42.56.550 expressly permits a show cause hearing to determine issues and the court may completely resolve public records act claims in the show cause proceeding. *West v. Gregoire*, 184 Wn. App. at 172 (2014). The show cause hearing may settle the threshold issue of whether there is a public records act violation, and, if so, whether the government agency's actions amounted to bad faith under RCW 42.56.565. *West v. Gregoire*, 184 Wn. App. at 172. A trial court may conduct a show cause hearing and dismiss a records act claim based solely on affidavits. *O'Neill v. City of Shoreline*, 170 Wn.2d at 153 (2010); *Forbes v. City of Gold Bar*, 171 Wn. App. at 864 (2012). A decision based on affidavits is a decision on the merits and is ordinarily not treated as a summary judgment motion on appeal. *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 793-94, 791 P.2d 526 (1990). These principles suggest that the trial court may resolve issues of fact based solely on affidavits.

13

A court is permitted to resolve issues in a public records act suit without a trial. *O'Neill v. City of Shoreline*, 145 Wn. App. at 938-39. A requestor has no constitutional right to a hearing with oral argument in a public records act case. *O'Neill v. City of Shoreline*, 145 Wn. App. at 939 (2008).

Some pronouncements in Washington decisions, including high court decisions, contradict our conclusion that we may defer to the trial court's findings entered after a show cause hearing on affidavits. An appellate court reviews public agency actions challenged under the public records act de novo. RCW 42.56.550(3); *Cornu-Labat v. Hosp. Dist. No. 2*, 177 Wn.2d 221, 229, 298 P.3d 741 (2013). When the trial court decides the case on the basis of affidavits, an appeals court will review its decision de novo. *Amren v. City of Kalama*, 131 Wn.2d 25, 32, 929 P.2d 389 (1997); *Zink v. City of Mesa*, 140 Wn. App. 328, 336, 166 P.3d 738 (2007). An appellate court stands in the same position as the trial court when the record consists entirely of documentary evidence and affidavits. *Cornu-Labat*, 177 Wn.2d at 229; *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994); *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d at 793 (1990); *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986); *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. at 714 (2011). The reviewing court is not bound by the trial court's factual findings. *Cornu-Labat*, 177 Wn.2d at 229; *Robbins Geller Rudman & Dowd, LLP v. Office of Att'y Gen.*, 179 Wn. App. at 720 (2014).

14

Despite the conflict with proclamations that an appeals court reviews de novo orders on show cause based solely on affidavits, we conclude that we should defer to the trial court's findings of fact because of statutory language and for policy reasons. To repeat, RCW 42.56.550(3) expressly authorizes the trial court to "conduct a hearing based solely on affidavits." If the trial court followed the normal summary judgment rule of denying a motion if a question of fact exists, this statutory language becomes a nullity. The court could not resolve the case based only on affidavits if a question of fact exists. The statutory sentence does not exclude from its coverage motions that create issues of material disputed facts.

When interpreting a statute, we strive to avoid a construction that would render a portion of a statute meaningless. *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007). For RCW 42.56.550(3) to be meaningful, the trial court should be free to resolve disputes of fact based only on affidavits, and this court should affirm if evidence supports the trial court's resolution. Several cases annunciate the principle that the court may completely resolve public records act claims in the show cause proceeding. *O'Neill v. City of Shoreline*, 170 Wn.2d at 154 (2010); *West v. Gregoire*, 184 Wn. App. at 171 (2014); *Zink v. City of Mesa*, 140 Wn. App. at 335-36 (2007).

Deciding factual disputes contained in affidavits quickens resolution of a public records act suit. Show cause hearings occur promptly; evidentiary hearings do not. The public records act is intended to provide a speedy remedy for a requestor to obtain a court

15

hearing on whether the agency has violated the act. RCW 42.56.550(1), (2); WAC 44-14-08004(1). The purpose of the quick judicial procedure is to allow requestors to expeditiously find out if they are entitled to obtain public records. WAC 44-14-08004(1). To speed up the court process, a public records case may be decided merely on the motion of a requestor and solely on affidavits. RCW 42.56.550(1), (3); WAC 44-14-08004(1). We do not wish to render public records act cases so expensive that citizens cannot use the act for its intended purpose. *O'Neill v. City of Shoreline*, 170 Wn.2d at 153 (2010).

Deciding the case on affidavits does not violate the requestor's due process rights. *O'Neill v. City of Shoreline*, 170 Wn.2d at 153-54. In *O'Neill v. City of Shoreline*, the high court held that the trial court, against a party's wishes, can resolve a public records act case on affidavits, although the high court did not address whether the reviewing court addresses anew the facts or defers to the trial court's findings of fact.

In *Wood v. Thurston County*, 117 Wn. App. 22 (2003), the trial court resolved, by accepting the county's affidavit, a disputed fact as to whether the county received a records request. Wood presented a declaration that he mailed the request to the county. Wood did not ask for live testimony before the trial court. Wood argued on appeal that he was entitled to a trial on the issue of whether the county received the disputed request. The court of appeals rejected the argument and affirmed the trial court's finding. The *Wood* court emphasized the statute permitting show cause hearings for public records act

16

cases. This court concluded that "Wood is not entitled to a trial on the factual issue the trial court resolved against him in the show cause hearing." 117 Wn. App. at 29.

*Issue 2: Did the Department of Corrections properly respond to Jeffrey McKee's November 24 request for his central file and pertinent records from his offender file?*

*Answer 2: Yes, based on the trial court finding of confusion.*

We have concluded that we will defer to the trial court's findings of fact despite the lack of an evidentiary hearing and even if a question of fact exists. We now affirm the trial court because substantial evidence supported the trial courts' finding of facts.

On November 24, 2014, Jeffrey McKee submitted to Coyote Ridge Corrections Center a public records act application that included a request for his central file and pertinent official records from his offender file. We note that the central file and offender file are the same, such that the two categories of documents sought by McKee overlapped.

Agencies must promptly disclose any requested public record unless it falls within a specific, enumerated exemption. RCW 42.56.070(1). An agency may need additional time within which to respond because of the need to clarify the request. RCW 42.56.520; *Forbes v. City of Gold Bar*, 171 Wn. App. at 863 (2012).

Each state agency must publish rules establishing methods of obtaining records under the Public Records Act. RCW 42.56.040(1). Failure to follow the agency's rules for obtaining records relieves the agency of the duty to provide the requested record.

17

*Parmelee v. Clarke*, 148 Wn. App. 748, 754-55, 201 P.3d 1022 (2008). WAC 137-08-090 controls the location to which one addresses a public records request to the Department of Corrections. The Department of Corrections rule declares:

> (1) All requests for the disclosure of a public record, *other than requests by incarcerated offenders for inspection* of their health record or *central file* must be submitted in writing directly to the Department of Corrections Public Records Officer at P.O. Box 41118, Olympia, WA 98504 or via e-mail at publicdisclosureunit@doc1.wa.gov identifying the record sought with reasonable certainty. . . .
>
> . . . .
>
> *Incarcerated offenders under the authority of the department of corrections shall submit requests to inspect their own* health record or *central file to the records manager at the facility in which, they are currently incarcerated.*

(Emphasis added.)

On November 25, 2014, Dena Leaverton, a Coyote Ridge records technician, returned Jeffrey McKee's November 24 request to McKee with a direction to send his request to the department's Olympia Public Disclosure Unit. If we were to resolve the facts on our own, we might disagree with the trial court that Leaverton's response was appropriate, particularly because one could conclude that McKee only requested records that WAC 137-08-090 directs to be sought from the offender's own facility. Nevertheless, the trial court found that McKee's broad request confused Leaverton such that she directed McKee to seek records from the Public Disclosure Unit. Leaverton also suggested to McKee that he send another kite if he wished access to his central file. Substantial evidence supports this trial court finding. Leaverton testified, in her affidavit,

18

that she did not understand what McKee intended his request for "pertinent official records." CP at 29.

Dena Leaverton was then free to direct Jeffrey McKee to seek records from Olympia. In turn, Olympia technician Cary Nagle sought a clarification, but, in the meantime, arranged for a review of McKee's records at Coyote Ridge. Jeffrey McKee never responded to Nagle's request for clarification. In a similar situation, this court found the department acted reasonably when it took no further action after the offender failed to respond to a request for clarification. *Bartz v. Dep't of Corr. Pub. Disclosure Unit*, 173 Wn. App. 522, 532-33 n.10, 297 P.3d 737 (2013). Coyote Ridge went further and allowed McKee access to his central file.

We review findings of fact under a substantial evidence standard. *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 814, 225 P.3d 280 (2009). Substantial evidence is evidence that would persuade a fair-minded person of the truth of the statement asserted. *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. at 814. We reserve credibility determinations for the fact finder and do not review them. *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. at 814. To repeat, substantial evidence supports the trial court's finding of fact 1 and the finding supports the conclusion that the Department of Corrections did not violate the public records act.

*Issue 3: Did the Department of Corrections properly respond to Jeffrey McKee's December 1 request for his central file and pertinent records from his offender file?*

19

*Answer 3: Yes, based on the trial court finding of confusion.*

Jeffrey McKee also asserts that the Department of Corrections failed to respond to his December 1, 2014 request for records. The December 1 request echoed the November 24 request. McKee sought his central file and pertinent official records from his offender file. Dena Leaverton replied to the December 1 request as she replied to the November 24 request. Therefore, we affirm for the same reasons that we affirm the trial court's denial of relief for the response to the November 24 public records request.

*Issue 4: Did the trial court err in not determining whether the Department of Corrections silently withheld records that are located in Jeffrey McKee's electronic file?*

*Answer 4: We need not address this question since the record allows us to make a determination that the Department of Corrections did not silently withhold records.*

In his first two public records requests, Jeffrey McKee sought access to his central file and pertinent official records from his offender file. In his third request, he sought only pertinent official records in his offender file. McKee argued before the trial court and argues on appeal that the Department of Corrections failed to give him access to electronic files. He contends that the department maintains electronic files not contained in his central file that he reviewed. He believes the electronic files would be part of his offender file. McKee further observes that the trial court did not address his argument that the department silently withheld access to his electronic files.

Although this court generally will not address issues the trial court has not

20

decided, we may choose to do so in the interest of judicial economy when the issue is clear. *Pascua v. Heil*, 126 Wn. App. 520, 533, 108 P.3d 1253 (2005). We choose to resolve the claim of silent withholding because the record permits a resolution, and we do not wish to create additional litigation for the parties and trial court.

Jeffrey McKee's contention fails because the Department of Corrections provided him with all records in his central file during his file review, except those listed in the exemption log. Before the review and on January 6, 2015, Public Disclosure Unit technician Cary Nagle asked Jeffrey McKee for a clarification of his request. McKee never responded to the request. In a similar situation, this court found the department acted reasonably when it took no further action after the offender failed to respond to a request for clarification. *Bartz v. Dep't of Corr. Pub. Disclosure Unit*, 173 Wn. App. at 532-33 n.10 (2013).

*Issue 5: Did the trial court err when it approved the Department of Corrections' redaction of victim names in McKee's judgment and sentence, published court of appeals opinion, and prohibited contact review?*

*Answer 5: No.*

Jeffrey McKee contends the Department of Corrections violated the Public Records Act by redacting victim information from his judgment and sentence, a published decision from his direct appeal, and prohibited contact review. The department responds that its redaction is proper because victim information is exempt from the public

records act by RCW 42.56.240(2). McKee replies that RCW 42.56.240(2) does not apply since he already knows the identity of his victims. We agree with the Department of Corrections.

RCW 42.56.240 provides:

> The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:
> . . . .
> (2) Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies, other than the commission, if disclosure would endanger any person's life, physical safety, or property.

We find no language in the statute that directs the government entity to disclose the identity of the victim of a crime if the requestor already knows the identity. Adopting Jeffrey McKee's contention would require the government agency to evaluate the subjective knowledge of a requestor, a task not demanded by the public records act.

Jeffrey McKee also contends that the Department of Corrections violated the public records act because victim information was accessible in other publicly available records. Again, no language in RCW 42.56.240 invalidates an exemption from the act if the exempted information is available publicly elsewhere. Adoption of McKee's argument would require the government agency to research public records to determine if the exempted data is found elsewhere, a task not demanded by the public records act.

*Issue 6: Whether the trial court erred when omitting a ruling on whether the Department of Corrections properly withheld the Bowman-Brooks e-mails?*

22

*Answer 6: We do not know. Therefore, we remand for further review by the trial court.*

Jeffrey McKee contends the trial court erred in not deciding whether the department violated the public records act by withholding four pages of e-mail from his central file review. The department responds that McKee abandoned this argument by not raising it at the show cause hearing. McKee contests that the issue was not abandoned because it was raised in his complaint, the department's motion to show cause, and his response to the motion to show cause.

In asserting Jeffrey McKee abandoned his claim, the Department of Corrections relies on our decision in *West v. Gregoire*, 184 Wn. App. 164 (2014). In *West*, we held that, even if a requestor raises a claim in his pleadings, he abandons the claim by failing to argue it in the show cause hearing. *West v. Gregoire*, 184 Wn. App. at 170-72. Jeffrey McKee asserted, in his brief opposing the motion to show cause, that the department wrongfully withheld e-mail between Bowman and Brooks. Since neither party ordered the transcript from the hearing, we are unable to determine if McKee forwarded this argument at the show cause hearing.

Our dissenting brother writes that Jeffrey McKee waived this claim because he failed to show that he forwarded the claim to the trial court at the time of the show cause hearing. In other words, our dissenting brother imposes the burden of showing the absence of waiver upon McKee. We disagree that a party holds the burden of disproving

23

waiver. Waiver is an affirmative defense. CR 8(c); *Mahoney v. Tingley,* 85 Wn.2d 95, 529 P.2d 1068 (1975); Upjohn v. Russell, 33 Wn. App. 777, 782, 658 P.2d 27 (1983). The party asserting waiver holds the burden of establishing the waiver. Christianson v. Snohomish Health Dist., 82 Wn. App. 284, 288, 917 P.2d 1093, 1096 (1996), aff'd, 133 Wn.2d 647, 946 P.2d 768 (1997); State v. Gross, 23 Wn. App. 319, 322–23, 597 P.2d 894 (1979). If the Department of Corrections wanted to show waiver, the department should have filed the show cause hearing transcript with this court. The Department of Corrections claims that the attorney-client privilege covered the e-mail. The attorney-client privilege is a valid exemption under the public records act, however the party asserting attorney-client privilege has the burden of showing the attorney-client relationship existed and that the exempted records contain privileged communications. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 745-47, 174 P.3d 60 (2007); *Hangartner v. City of Seattle*, 151 Wn.2d at 451-53 (2004); *Zink v. City of Mesa*, 162 Wn. App. at 724 (2011).

If the record permitted us, we would decide the merits of whether the attorney-client privilege exempted the records. Nevertheless, the affidavits submitted by the Department of Corrections do not enable us to reach the merits.

We remand to the trial court the question of whether Jeffrey McKee failed to argue, at the show cause hearing, the wrongful withholding of the Bowman-Brooks e-mail. If McKee did not present this argument at the hearing, McKee abandoned the

24

contention. If McKee presented the argument at the hearing, the trial court should address the merits of the question of whether the attorney-client privilege exempts disclosure of the e-mail.

CONCLUSION

We affirm the trial court's dismissal of Jeffrey McKee's public records act suit, except to the extent McKee claims the Department of Corrections wrongfully withheld the Bowman-Brooks e-mail. We remand to the trial court to determine if McKee abandoned this contention, and, if not, to address the merits of the claim.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

I CONCUR:

_____
Siddoway, J.

33876-2-III

KORSMO, J. (dissenting) — There is no need to remand this case for a hearing about what took place at the previous hearing. Jeffrey McKee asserted that he was entitled to see the missing e-mails while the Department of Corrections (DOC) asserted its attorney-client privilege to withhold them. Clerk's Papers at 9, 232-233. The trial court did not order DOC to produce the documents. Ergo, either Mr. McKee agreed with the claim and did not argue the point (as DOC contends), or the trial court concluded that they were privileged, or both. If Mr. McKee had any confusion on that point, he was quite free to ask the trial court to clarify its ruling. He did not.

More fundamentally, it was Mr. McKee's burden to provide the record necessary to resolve his claim that the trial court did not address the e-mail issue. *E.g.*, *Allemeier v. Univ. of Wash.*, 42 Wn. App. 465, 472-473, 712 P.2d 306 (1985) (appellant has burden of perfecting record for appeal).[1] Mr. McKee decided to proceed without obtaining a verbatim transcript of the hearing. He, accordingly, has waived his right to complain about any perceived shortcomings of that hearing since he is unable to prove that anything

---

[1] While DOC could have provided the transcript, it was under no responsibility to pay for a record that the appellant needed in order to support his appeal.

untoward occurred. Since the majority improperly shifts the burden of production to the respondent, I dissent.[2]

While that is sufficient to explain my disagreement with the majority, that opinion's thoughtful discussion concerning whether to give deference to the trial court's findings from a paper record provides a nice opportunity to opine on that point as well. The majority notes that in a number of recent cases appellate courts have conducted their own review of documentary records and reached their own factual conclusions. The majority wisely eschews that approach here, relying on language from the governing statute.

This recent trend in the case law is disturbing because it confuses the roles of trial courts and appellate courts. Trial courts *decide* cases, primarily by determining what happened—*i.e.*, they find facts. Appellate courts *review* the trial court's processes to determine if there was some prejudicial error that calls the trial court's decision into question. There was a time in the past when appellate courts felt free to make their own

---

[2] The majority errs in concluding that because the respondent would have the burden of proving waiver, it had the obligation to provide a transcript. This skips a step in the analysis. Mr. McKee first had to show that he raised the claim in the trial court before he could claim the trial court erred by not resolving the issue. His failure to object to the lack of a ruling or to seek reconsideration strongly suggests that respondent is correct in its assertion that McKee abandoned the argument in the trial court. Respondent should not be required to pay for an unnecessary transcript to prove the point when it was appellant's obligation to prove that he made the argument and also explain why he let the matter go unresolved.

factual determinations, but Washington abandoned that practice two generations ago. *See Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Now, we do not weigh the evidence under any circumstance. *Id.* at 575; *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). We similarly do not substitute our judgment for that of the trier of fact. *Thorndike*, 54 Wn.2d at 575. Whether the facts are as the parties allege is for the trial judge to determine, not this court. *Id.*

Trial courts and appellate courts have different functions. The fact that appellate judges can probably[3] read as well as trial judges do should not be treated as a justification for usurping the trial court's role within the judicial branch. The separation of powers doctrine should be respected for intra-branch disputes as it is in the classical circumstance when the executive, legislative, and/or judicial branches of government are in conflict with each other. For that reason, I believe that the majority appropriately gives deference to the trial court's factual findings.

I respectfully dissent from the decision to remand to the trial court for an unnecessary hearing.

Korsmo, J.

---

[3] An argument certainly can be made that in many instances the trial judge is likely to have a better knowledge of the actors before them, even if the appearance is in a document, and more accurately assess the credibility of the evidence than an appellate judge can.

3